Argued January 7, reversed and remanded with
instructions April 18, 1974

EQUITY LAND RESOURCES, INC., *Appellant,*
*v.* DEPARTMENT OF REVENUE, *Respondent.*

521 P2d 324

*Edward L. Clark, Jr.,* Salem, argued the causes for appellant. With him on the briefs were Clark, Marsh & Lindauer, Salem.

*Alfred B. Thomas,* Assistant Attorney General, Salem, argued the causes for respondent. With him on the brief were Lee Johnson, Attorney General, and Theodore W. deLooze, Chief Tax Counsel, Salem.

HOLMAN, J.

Plaintiff appealed from a decree of the Oregon Tax Court which sustained defendant's $1,700,000 evaluation of the real property upon which plaintiff is obligated to pay ad valorem taxes. 5 OTR 222 (1973). It was stipulated that the value of the property for tax purposes was the same for both 1971 and 1972, the tax years in question. Since real property is evaluated as of January 1 for each tax year, the date of the assessment under consideration is January 1, 1971. This is the second case concerning the taxable value of this piece of property. See *Commonwealth v. Dept. of Rev.,* 4 OTR 80 (1970), *reversed,* 259 Or 140, 484 P2d 1103 (1971).

The property in question is comprised of an entire block in the core of the city of Salem and is developed as a shopping center. All improvements and approximately one-third of the land were purchased in fee by plaintiff and the balance of the land is controlled by it as lessee by long-term ground leases under the provisions of which plaintiff is obligated to pay all real property taxes for both land and improvements. Plaintiff purchased its entire interest in the shopping center as of January 1, 1971, the assessment date in question, for $750,000. The principal dispute in this case concerns the value of plaintiff's interest. Also in dispute, but with less divergence, is the owners' interest in the fee of the two-thirds of the land under long-term ground leases to plaintiff and upon which plaintiff is obligated to pay the taxes.

■ Plaintiff claims the trial court erred in failing to use the price at which it purchased its interest in the property as the value of that interest for tax purposes. The evidence of the defendant relating to this interest was based primarily upon the income approach by its use of what it considered economic rents rather than the actual rents which the property was bringing. ORS 308.232 requires that all real property be assessed at its "true cash value." ORS 308.205 defines "true cash value" to be "market value as of the assessment date." Defendant's rule OAR 150-308.205-(A) 1.a. provides:

> "a. Market Value as a basis for true cash value shall be taken to mean the highest price in terms of money which a property will bring if exposed for sale in the open market, allowing a period of time typical for the particular type of property involved and under conditions where both parties to the transaction are under no undue compulsion to sell

or buy and are able, willing and reasonably well-informed."

In *Portland Canning Co. v Tax Com.*, 241 Or 109, 404 P2d 236 (1965), we reviewed these statutes and similar regulations and said:

"Clearly the dominant note of the legislation is that, if possible, value is to be ascertained in accordance with market value. While the commission has been given power to make regulations setting forth procedures as to how this may be done, it cannot vary the mandate of the law under this guise. If a market existed for the kind of property being assessed, the property had to be evaluated by the market data approach. The commission has no power to permit the evaluation of the property by the exclusive means of the cost approach to determine the value to the owner when a market in fact exists." 241 Or at 113.

Although defendant relied primarily upon the income approach rather than the cost approach, the statement is nonetheless applicable.

In the trial court's opinion the sale price of the subject property as illustrative of its true cash value is discredited in the following manner:

"The defendant, in rebuttal, quoted the oft-repeated adage that 'one sale doesn't make a market.' This rule-of-thumb is supported by a number of cases holding that the sale price of a specific item of real estate is not conclusive as to its fair market value. [citations.] In this court's view a single sale may be some indication of market value, but it is suspect. [citation.] This is especially true when the subject property constitutes the sale (although the defendant, in its administrative rule, OAR 150-308.205 (A) b, indicates that such sales are 'relevant') * * *." 5 OTR 222 at 229-30.

The facts surrounding the sale of the property are fairly stated by the trial court in its opinion as follows:

"The interest of the original developer, Commonwealth, Inc., was taken over by GAC Salem Realty Corporation in December 1968. Soon thereafter, the parent corporation, of which GAC Salem Realty Corporation was a subsidiary, determined as a matter of policy to sell off all its operating properties throughout Oregon. Salem Plaza was placed on the market with an asking price of $1,100,000. Information was supplied to brokers throughout the United States but no serious bids were received, although there is evidence that the property was studied by a number of individual and institutional investors. In May 1970, upon the recommendation of its managing agent, GAC Salem Realty Corporation's interest was offered for $750,000. On December 23, 1970, plaintiff deposited earnest money, agreeing to this amount, the sale to be effective as of January 1, 1971, and the agreement was consummated. (On December 26, 1970, an earnest money receipt was signed by another corporation, offering $800,000, but the first offer had already been accepted.) The total consideration of $750,000 was paid to GAC Salem Realty Corporation for approximately one-third of the land in fee and all the improvements in Block 24, plus the assumption by the plaintiff of eight ground leases, covering the remaining two-thirds of the land, requiring total annual rental payments of approximately $51,000, to be increased 66 percent in regular increments over the term of the leases (60 years beginning in 1966)." 5 OTR 222 at 225.

■ It is our opinion that the sale price to plaintiff fairly represents the market value of that which he purchased. The property was on the market for two years before it was sold, it was widely advertised and was offered for the last seven months of that period at the price for which it was sold to plaintiff. The sale

was effected on the assessment date and was made by people who were knowledgeable in the market, who were given expert advice, and who were not forced to sell. It was a genuine, arm's-length purchase by someone who had no connection with the seller and who was not forced to buy. In the absence of being discredited by any special considerations or by comparable transactions which indicate that the price paid was out of line with other market data material, we believe it to be one of the best and most satisfactory standards for the estimation of actual value although, admittedly, it is not conclusive. *See Kem v. Dept. of Rev.,* 267 Or 111, 114, 514 P2d 1335, 1337 (1973).

■ Defendant seeks to discredit the sale, claiming the property was subject to uneconomic leases to tenants, which leases depreciated its value. The evidence was conflicting upon this subject but it is our impression that plaintiff had much the better of the dispute. There was evidence indicating that, since the completion of the improvements in 1966, five other shopping centers, all of which are larger (most of them much larger) than the subject property, have been built in the city of Salem. The property in question is, always has been, and in the foreseeable future will be, affected by adverse vehicular traffic patterns and parking problems. Our opinion gained from the evidence is that if all the space were available for rent today, the picture would be substantially the same. We conclude that, as of the assessment date, the market value and, thus, the true cash value of that interest in the property which the plaintiff purchased was $750,000.

■ This leaves the evaluation of the fee interest in the two-thirds of the land, which is under ground lease to plaintiff. The present annual actual rental is

$51,374. Plaintiff capitalizes this rental at 10 per cent and comes out with a value of $513,740. On the other hand, defendant has set the value of the total land area at $955,000. Under defendant's figure the value of the two-thirds of the area under ground leases would, therefore, be $636,667. We do not believe that plaintiff has carried the burden of proving that 10 per cent is the proper capitalization rate for the lessors' ground rents; therefore, we believe plaintiff has not carried the burden of proving that defendant's assessment was incorrect.

The total value of all interests in the property is set at $1,385,000.

Reversed and remanded with instructions to enter a decree in accordance herewith.