IN THE OREGON TAX COURT
MAGISTRATE DIVISION

COOS COUNTY ASSESSOR,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant,*

*and*

SJP LLC and PONY VILLAGE MOTOR LODGE,
*Intervenor-Defendant.*

(TC-MD 021158C)

David R. Koch, Assistant Coos County Counsel, Coquille, filed the motion for Plaintiff (the county).

James C. Wallace, Assistant Attorney General, Department of Justice, Salem, appeared on behalf of Defendant (the department).

Rohn R. Roberts and Loren S. Scott, Arnold Gallagher Saydack Percell Roberts & Potter, P.C., Eugene, filed the cross-motion for Intervenor Defendant (taxpayer).

Decision issued February 6, 2004.

**DAN ROBINSON, Magistrate.**

Plaintiff Coos County Assessor (the county) appeals from an order of Defendant Department of Revenue (the department), arguing that the department abused its discretion under ORS 306.115[1] by accepting a petition and ultimately reducing the value of certain real property identified in the assessor's records as Account 3270.23 for tax years 1998-99 and 1999-2000. For ease of reference the parties are referred to as the county, the department, and taxpayer or petitioner.[2]

## I.  STATEMENT OF FACTS

Taxpayer's representative, David Carmichael (Carmichael), filed a property appeal petition with the Department on behalf of "SJP LLC and Pony Village Motor Lodge." The petition was filed in June 2001, and sought a reduction in value for the 1998-99 and 1999-2000 tax years. The address listed on the petition for petitioner was that of Harish Patel (Patel), a member of SJP LLC (SJP).[3] Patel purchased the property in March 2000 from Eileen Cusack (Cusack), the owner of Pony Village Motor Lodge (Pony Village). Cusack owned Pony Village through all of the 1998-99 tax year and most of the 1999-2000 tax year, until the sale in March 2000.

The petition indicated that the county's real market value for both tax years was $2,140,207, and that petitioners' estimate of value was $1,105,000. The petition further indicated that the value of the property was not appealed to the county Board of Equalization.[4] The petition also included the following explanation:

"Real market value does not exceed requested value. Jurisdiction by ORS 306.115. The parties to the appeal appear to agree to facts which indicate it is likely that an error

---

[1] All references to the Oregon Revised Statutes (ORS) are to 1999.

[2] The department's rules refer to the person filing the petition as the "petitioner." Much of the court's discussion in this case concerns the department's administrative proceeding and, therefore, taxpayer is at times referred to in this Decision as petitioner.

[3] Although it is not entirely clear to the court, it appears that Patel is the sole member of SJP.

[4] The Board of Equalization was replaced by the Board of Property Tax Appeals in 1997.

exists on the roll as contemplated under OAR 150-306.115(3)(b)(B)(ii)."

Carmichael also included his own address and telephone number at the bottom of the petition.

In response to the petition, the department sent the county a County Information Request form (request form), which the county completed and returned to the department on August 7, 2001. The county confirmed that the property was not appealed to the Board of Property Tax Appeals (the board). Question 4 on the request form asks, "Does the county agree to the facts as represented by the taxpayer on their petition and/or completed questionnaire?" In response, the county checked the box next to the word "Yes." By way of explanation, the county stated: "Pony Village Motor Lodge's owner for the years under appeal, did not file petition with either BOPTA [the board] nor Magistrate [*sic*] or Dept of Revenue to have value reduced." In response to question 5, the county indicated that BOPTA reduced the value for tax year 2000-2001 to reflect the sale price to SJP, the new owner, and that no other information had been presented to warrant a reduction. The county further indicated that SJP did not own the property for the years under appeal.

The department held a supervisory conference on October 18, 2001. Carmichael and Patel appeared for petitioner, and Dave Bowman (Bowman), an appraiser with the county assessor's office, appeared for the county. Petitioner presented evidence about the sale of the subject property, the condition of the property, and gross revenues. Some of that information was obtained from the assessor's appraisal cards that Bowman had provided Carmichael. During that conference Bowman raised the issue of standing because Patel did not own the property in 1998 or 1999. In response, Carmichael noted that Patel paid a prorated portion of the property taxes for the 1999-2000 tax year and that Cusack, the seller, who owned the property for all of the 1998-99 tax year, assigned her appeal rights to Patel. The assignment, which was executed on April 6, 2001, after the sale of the property, appoints Carmichael as Cusack's attorney-in-fact and authorizes him to receive and endorse on Cusack's behalf any and all documents, including a property tax refund.

After the supervisory conference, the department issued a Preliminary Ruling dated October 26, 2001, in which it concluded that a likely assessment error existed, based on the parties' agreement to certain facts. With regard to the standing issue, the department noted in the Preliminary Ruling that SJP had standing for the 1999-2000 tax year because it was responsible for part of the property taxes for that year. In addition, the assignment, which not only assigned Cusack's appeal rights, but appeared to provide Carmichael with authorization to appeal the values on behalf of Pony Village, established petitioner's standing for the 1998-99 tax year.

On or about November 30, 2001, the county requested that the department reconsider its decision to assert supervisory jurisdiction. The department denied the county's request in a letter dated January 4, 2002. After the matter was set for a merits conference, but before the conference was held, the county submitted to the department a written request for dismissal. That request was denied and the county requested reconsideration. The department denied the request for reconsideration.

The department thereafter held a merits conference on June 18, 2002, and then issued its conference decision on July 8, 2002, ordering the county to reduce the value on the roll and refund excess taxes with statutory interest to the petitioner.

## II. ANALYSIS

The county argues that the department abused its discretion by accepting the petition, because the petition did not contain a sufficient statement of facts and was not accompanied by a copy of the written notice being appealed. The county further argues that the petition was materially deficient because it did not appear to be filed by a person who either owned the property or was required to pay the taxes, or by such person's authorized representative. Further, the county argues that the department acted in an arbitrary and capricious manner when it asserted supervisory jurisdiction without a specific finding that the subject property likely had not been taxed in accordance with applicable law and that

there was insufficient evidence to support supervisory jurisdiction under the "agreement to facts" standard set forth in the administrative rule. Finally, the county asserts that the department acted in an arbitrary and capricious manner when it ordered a correction to the tax roll without a specific finding that the order was necessary to insure that the property was taxed in accordance with applicable law.

## A. *Statutory Overview*

The department acted under the authority granted it pursuant to ORS 306.115, a statute requiring the department to exercise general supervision and control over the state's system of property taxation. ORS 306.115(1) provides, in pertinent part:

> "The department may do any act or give any order to any public officer or employee that the department deems necessary in the administration of the property tax laws so that all properties are taxed or are exempted from taxation according to the statutes and Constitutions of the State of Oregon and of the United States."

ORS 306.115(3), which is the specific provision under which the department acted in this case, allows the department to reduce the value of a particular property for the current and two prior tax years "if for the year to which the change or correction is applicable the department discovers reason to correct the roll which, in its discretion, it deems necessary to conform the roll to applicable law without regard to any failure to exercise a right of appeal."

The department has promulgated an administrative rule pertaining to ORS 306.115(3). That rule provides, in relevant part, that:

> "the department will conform or correct the roll under ORS 306.115(3) when it finds that the facts require such an action after considering the substantive issue in a petition.
>
> "(A)   The substantive issue in a petition will be considered under ORS 306.115(3) when:
>
> "* * * * *
>
> "(ii)   The parties to the petition agree to facts which indicate it is likely that an error exists on the roll."

OAR 150-306.115(3)(b).

B. *Sufficiency of the Petition*

■　　　In enacting ORS 306.115, the legislature mandated that the department exercise general supervision and control over the state's system of property taxation. The department may correct the roll if it discovers reason to do so. ORS 306.115(3). The petition process provides a means by which a person may help the department discover a reason to correct the roll, but it is not an appeal in the traditional sense. *FSLIC v. Dept. of Rev.*, 11 OTR 389, 391 (1990).

■　　　When the department receives a petition, it may do one of four things. The department may request supplemental information to determine if the statutory and regulatory requirements have been met; it may hold a supervisory conference to determine if those requirements are met; it may set the matter for a conference to consider the substantive issue in the petition; or it may deny the petition if it determines that it does not have authority to consider the substantive issue in the petition. OAR 150-306.115(2). Those four actions are not mutually exclusive. That is, the department may initially request supplemental information, then schedule the matter for a supervisory conference, and then, if it finds that the requirements of the statute and administrative rules have been met, it may hold a conference to consider the substantive issue in the petition.

■　　　The department's rule sets forth the requirements for a sufficient petition. The rule provides, in pertinent part, that:

"petitions to the department shall include the following information:

"(a)　A brief statement of the facts on which the appeal is based;

"(b)　A statement of the specific result requested by the petitioner;

"(c)　Petitioner's address and phone number;

"(d)　The signature of the petitioner or authorized representative, verified by a written declaration that the

contents of the petition are true and made subject to the statutory penalties for false swearing;

"(e)   The assessor's tax account number or identification number of the property in question;

"(f)   In an appeal from an act or omission by a county tax official or the department, a copy of the written notice of the act or omission being appealed must be attached."

OAR 150-306.115-(A)(1).

### 1.   *Statement of Facts*

The county argues that the department abused its discretion by accepting taxpayer's petition without a sufficient statement of facts, as required by paragraph (a) of the rule set forth above. The county notes that the rule requires "[a] brief statement of the facts on which the appeal is based" and that the burden is on petitioner to demonstrate that the requirements of the statute and the department's rules have been met, before the substantive issue in a petition may be considered. OAR 150-306.115(2). The court agrees with that assessment. However, the court does not agree that in this case the facts set forth in the petition failed to meet the sufficiency requirements of the rule.

■   An important consideration in determining the sufficiency of a petition is whether the petition informs the department and the nonappealing participant of the "nature of the claim for relief." OAR 150-306.115-(A)(1).[5] As taxpayer points out in its memorandum to the court, the rule only requires a "brief" statement of facts. It is clear from a review of the petition that petitioner disagreed with the value on the tax rolls for tax years 1998-99 and 1999-2000; that petitioner wanted the value reduced to $1,105,000; that review was sought under ORS 306.115; and that petitioner believed the parties agreed to facts that would indicate the likelihood of an error on the roll.

---

[5] OAR 150-306.115-(A)(1) provides, in relevant part:

"The purpose of a petition is to inform the Department and the nonappealing participant of the nature of the claim for relief. For this reason, petitions to the department shall include the following information [brief statement of the facts, the result requested, the petitioner's address, etc.]."

As stated above, the rule provides alternative actions that the department may take when it receives a petition that does not provide adequate information for it to determine whether the requirements of the statute and the administrative rule have been met. The department may either request supplemental information from a petitioner or set the matter for a supervisory conference. In some instances, both steps may be necessary. OAR 150-306.115(2) provides, in relevant part:

"Before the substantive issue can be considered, the petitioner has the burden of presenting information which demonstrates that the requirements of ORS 306.115 and this rule have been met. A determination will be based on the record before the department.

"If the petition does not provide adequate information to make this determination, supplemental information *may* be requested from the petitioner. The petitioner's failure to provide the requested information within the time specified may result in the dismissal of the petition.

"If a determination cannot be made from the written information, a supervisory conference will be held."

(Emphasis added.)

The department certainly could have requested supplemental information before setting the matter for a supervisory conference. If that information, together with the information in the petition and that provided by the county in response to the department's request form, clearly established that the requirements of the statute and rule were met, a supervisory conference would not have been necessary. However, a supervisory conference may still have been necessary after the receipt of any supplemental information. The department's approach in this case simply eliminated the interim step of requesting more information from petitioner. Thus, the rule allows the department to request supplemental information without requiring it to do so. This is clear from the use of the word "may" in the rule set forth above.

The court finds that the department did not abuse its discretion in accepting the petition and setting the matter for a supervisory conference, after receiving information from

the county, and without requesting supplemental information from petitioner. In fact, the department did not act contrary to its rule.[6]

## 2. *Attaching a Copy of the Notice*

The county further argues that the petition was not sufficient because it did not include a copy of the property tax statement for the years at issue and the department's failure to comply with its administrative rule (by demanding that the petition include a copy of those statements) was arbitrary, capricious, and an abuse of discretion. Taxpayer responds that it was not appealing from an act or omission of the assessor, but rather "was appealing the tax assessment from prior years [and] there is no act or omission being appealed." Taxpayer insists no notice was ever provided and, therefore, there was no notice to attach to the petition.

The applicable portion of the administrative rule provides: "In an appeal from an act or omission by a county tax official or the department, a copy of the written notice of the act or omission being appealed must be attached." OAR 150-306.115-(A)(1)(f). Moreover, subsection (1) of the rule provides that petitions "shall" include that information.

The court disagrees with taxpayer's assertion that no notice was provided by the county. The county mails a property tax statement each year to the owner of record pursuant to ORS 311.250. The tax statement sets forth the county's value determinations. Taxpayer was appealing those values. Therefore, in this case the tax statement for the prior tax years is the notice required by the rule. However, the "requirement" is tempered by additional language in paragraph (1)(f) of the rule, which states that the Property Tax Conference Unit shall provide written notice to a petitioner that a petition is deficient if it "finds a petition to be deficient

---

[6] It is true that elsewhere in the rules there is a provision that the department (specifically, the Property Tax Conference Unit) "shall" notify a petitioner if it finds a petition to be deficient, and dismiss the petition if the information is not forthcoming. However, that directive is dependent on the department first finding the petition to be deficient. The sentence begins with the word "if" and therefore leaves it to the discretion of the Property Tax Conference Unit to determine whether a petition should be deemed deficient. *See* OAR 150-306.115-(A)(1)(f).

in any *material* respect." OAR 150-306.115-(A)(1)(f) (emphasis added). The materiality requirement provides the department with some discretion in determining whether a petition is deficient and in this case the department apparently determined that the petition was not deficient for failing to include a copy of the property tax statements for the years at issue. Given the amount of discretion in the department's rule, and the limited nature of the court's review, the court concludes that the department did not act in an arbitrary and capricious manner when it accepted the petition without copies of the tax statements. Experience may have taught the department to adopt a flexible approach to reviewing petitions in order to avoid having to dismiss petitions with valid concerns that can help it discover reason to correct the roll. In any event, the court finds the department's action was not contrary to the rule and not an abuse of its discretion.

### 3. *Standing*

The county insists the petition was materially deficient because it did not appear to be filed by a person who owned the affected property or who had an interest in the property that obligated the person to pay taxes during the tax years in question, or by such a person's authorized representative. The county's argument on standing appears to hinge, at least in part, on its contention that the department should have demanded that petitioner submit property tax statements for the years at issue, because those statements would have revealed that Pony Village, and not SJP, was the listed owner. That observation, insists the county, would have revealed two problems with the petition, one regarding the status of petitioner and the other the status of the representative.

The county argues that the department's rule requires that a petition be filed by the property owner or a person obligated to pay the taxes and that, if the department had required a copy of the tax statements, it would have observed that Pony Village was the listed owner for the years at issue. That should have raised some question as to the identity of SJP relative to the property at issue. Moreover, according to the county, the petition, as filed, suggests that SJP is the only petitioner because, although both SJP and

Pony Village are listed as petitioners, only the address of SJP was provided, and the department's rule requires the address and phone number of the "petitioner." In the county's view, the absence of an address for Pony Village waives the presumption that the petition represented anyone other than SJP. Additionally, the assessor responded to the department's request form by stating that "SJP, LLC did not own property for years appealing."

As for the representation problem, the county argues that the petition should have been returned to Carmichael because he only appeared to represent SJP (Patel) at the time the petition was filed and there was no evidence SJP owned the property or paid the taxes. Accordingly, the county argues that SJP did not appear to have a valid interest in the property sufficient to entitle a petition to be filed on its behalf.

■ The court agrees with the county's assertion that the department's rule provides that correspondence submitted by someone who does not appear to be an authorized representative per ORS 305.230 is not considered a valid petition and must be returned to the sender. OAR 150-306.115-(A)(1)(f). The rule explicitly requires such action. The relevant language reads, "any correspondence concerning [a] petition which is filed by someone who does not appear to be an authorized representative pursuant to ORS 305.230 will not be considered a valid petition. Such correspondence will be returned to the sender." *Id.* However, the rule in effect at the time the petition was filed did not require that a petitioner own the affected property or have an obligation to pay the taxes. The provision in the administrative rule that the county cites is the result of an amendment to the rule that was not effective until August 1, 2001. As amended, the rule requires that petitions be filed "by a person owning the affected property or holding an interest in the affected property that obligates the person to pay taxes imposed on the property." OAR 150-306.115-(A)(1) (Aug 1, 2001). The petition in this case was filed with the department in June 2001, and the version of the rule in effect at that time did not include the language quoted immediately above. The rule then in force was silent as to who could file a petition.

In addition, as taxpayer points out in its memorandum opposing the county's motion for summary judgment, the rule does not require evidence in the petition that petitioner has an interest in the property, only that petitioner actually have such an interest. The petition was filed on behalf of both SJP and Pony Village. Pony Village owned the property during the 1998-99 tax year and both petitioners owned the property and paid a portion of the taxes for the 1999-2000 tax year. The county concedes that Patel had a sufficient interest in the property for the 1999-2000 tax year. Cusack, the principal of Pony Village, executed an assignment of appeal rights providing in part that Pony Village consents to being added to any property appeal.

As for the representation issue, Carmichael filed the petition and he is a qualified representative under ORS 305.230. In addition, Carmichael was authorized to represent Patel on behalf of SJP, and Cusack's assignment appoints Carmichael as attorney for Pony Village. Carmichael testified to those facts at the department's supervisory hearing and the county has not refuted that claim. According to Patel's testimony at that supervisory hearing, Cusack's assignment was made, at least in part, because the property she sold to SJP had significant problems and she felt the taxes were too high. The assignment gives Carmichael authority to receive and endorse a property tax refund.

C. *Allegation and Finding Required to Assert Supervisory Jurisdiction*

The county argues that the department was required to find that the property had likely not been taxed in accordance with applicable law before considering the substantive issue in the petition. The county acknowledges that subsection (1) of ORS 306.115 authorizes the department to perform any act or give any order it deems necessary, but insists that the department's authority has express limits. First, the order must relate to the department's administration of the property tax laws, and, second, it must be issued to ensure that all properties are taxed or exempted in accordance with applicable statutes and constitutions. ORS 306.115(1). Additionally, under subsection (3) of the statute,

any change or correction ordered by the department must be based on a reason to correct the roll that the department "deems necessary to conform the roll to applicable law." That being the case, the county insists the petitioner was required to allege that the property was not taxed in accordance with applicable law and that the department was required to make such a finding in its Preliminary Ruling. Those shortcomings, insists the county, constitute arbitrary and capricious action by the department that were beyond the scope of its authority. The court disagrees with the county's conclusions.

ORS 306.115 is a broad grant of authority given to the department by the legislature. In fact, it is a mandate for the department to oversee the state's property tax system. The statute provides, in part:

"(1) The Department of Revenue shall exercise general supervision and control over the system of property taxation throughout the state. The department may do any act or give any order to any public officer or employee that the department deems necessary in the administration of the property tax laws so that all properties are taxed or are exempted from taxation according to the statutes and Constitutions of the State of Oregon and of the United States. Among other acts or orders deemed necessary by the department in exercising its supervisory powers, the department may order the correction of clerical errors, errors in valuation or the correction of any other kind of error or omission in an assessment or tax roll as provided under subsections (2) to (4) of this section."

Subsection (3) of the statute authorizes the department to order a change or correction to the roll if "the department discovers reason to correct the roll which, in its discretion, it deems necessary to conform the roll to applicable law without regard to any failure to exercise a right of appeal." Finally, subsection (4) provides that the department "may determine whether any of the conditions specified in subsection (3) * * * exist" before ordering a change to the roll.

The administrative rule does place the burden on the petitioner to demonstrate that the requirements of the statute and the rule have been met. OAR 150-306.115(2). However, there is nothing in the statute or rules requiring

specific allegations in the petition. ORS 308.232 provides that all property "not exempt from * * * taxation or subject to special assessment shall be valued at 100 percent of its real market value." The petition in this case asserted a disagreement in real market value in excess of 50 percent. That amount is considerably more than the 10 percent variation that this court has recognized can exist between equally competent appraisers, and suggests the property was not assessed in accordance with applicable law. *See Price v. Dept. of Rev.*, 7 OTR 18, 25 (1977).

Similarly, the department's preliminary ruling need not expressly state that the likely assessment error is caused by the assessor's failure to comply with applicable law. The statute gives the department broad discretion to determine whether a change is necessary to conform the roll to applicable law, and neither the statute nor the rule requires the department to make a specific finding of such a necessity. The operative language of the statute reads: "The department may do any act or give any order to any public officer or employee that the department deems necessary in the administration of the property tax laws so that all properties are taxed or are exempted from taxation according to the statutes and Constitutions of the State of Oregon and of the United States." ORS 306.115(1). There is nothing there or elsewhere in the statute or rules requiring the type of finding the county insists was necessary.

The department determined, based on all the evidence before it, that there was an agreement to facts and, based on that agreement, found "it likely that an error exists in the 1998-99 and 1999-00 assessments." Accordingly, the department moved the case forward to consider the substantive issue based on the "agree[ment] to facts" standard set forth in its rule. *See* OAR 150-306.115(3)(b)(A)(ii). The court finds nothing arbitrary or capricious about that decision.

D. *Finding Required When Ordering a Correction*

A related argument made by the county is that when the department issued its conference decision ordering a correction to the tax roll, it was required to make a specific finding that the order was necessary to ensure that the property was taxed in accordance with applicable law. This is the

county's final argument, but will be discussed here because it relates to the discussion immediately above. In fact, the argument relates so closely that the court rejects the county's assertion for the same reason it rejected the county's claim that the department was required to state in the preliminary ruling that the likely assessment error was caused by the assessor's failure to comply with applicable law. There is nothing in the statute or the rules requiring the department to state in a decision ordering a reduction in value that the property was not taxed according to applicable state and federal statutes and constitutions or that the correction was necessary to conform the roll to applicable law. As indicated above, ORS 306.115(1) authorizes the department to "do any act or give any order to any public officer or employee that the department deems necessary [to ensure] that all properties are taxed * * * according to the statutes and Constitutions of the State of Oregon and of the United States." The statute does not require the department to make that specific finding when it orders a correction to the roll. Similarly, ORS 306.115(3) authorizes the department to change or correct the value of a property where "the department discovers reason to correct the roll which, in its discretion, it deems necessary to conform the roll to applicable law," but the department is not required to declare that the correction is necessary to conform the roll.

E. *Agreement to Facts*

The county goes to considerable lengths to persuade the court that the facts to which the parties agreed did not support the department's conclusion that it is likely an error existed on the roll, and that the department must itself determine whether there is likely an error on the roll. In other words, the county does not like the department's decision and believes it applied the wrong standard.

The court agrees with the county that, when the department reviews a petition under the agreement to facts standard, "it is not required that the parties agree there is an error on the roll. [The rule] merely requires the parties to agree on facts. It is left to defendant to determine whether those facts indicate that it is likely an error exists on the roll." *Ohio State Life Ins. Co. v. Dept. of Rev.*, 12 OTR 423, 426

(1993). However, the court rejects the county's assertion that the department cannot even consider whether the parties agree there is an error. Although it is not "required" that the parties agree that there is an error on the roll, the department does not abdicate its responsibility if it accepts such an agreement, particularly where, as here, there are factual agreements tending to support the opinion that there likely is an error on the roll. The parties in this case agreed to the following facts at the department's supervisory hearing:

1.   The rooms were dated, the property needed refurbishing, and the roof needed work.

2.   The roll value for tax years 1998 and 1999 was $2,140,207.

3.   There was a sale of the property in March 2000 for $1,275,000.[7]

4.   The county appraiser felt that the sale appeared to be arm's-length and that the price was probably appropriate for the property.

5.   The county board reduced the value for the 2000-2001 tax year to $1,275,000, based on the assessor's recommendation, which in turn was based on the sale price.

6.   The county appraiser testified that the roll value of more than $2 million was likely on the high side.

■      The county argues that the agreement to facts must be unequivocal and that, in this case, there was not an unequivocal agreement to the key facts relied upon by the department in its Preliminary Ruling. This court has previously said that under the "agreement to facts" standard, the parties' agreement must be unequivocal. *Direct Imports v.*

---

[7] It is not entirely clear to the court how much the property sold for. Although the transcript indicates that Bowman, in discussing the sale, "felt that a million, two hundred fifty thousand was probably appropriate for the property," both the department's Preliminary Ruling and Conference Decision state that Patel purchased the property for $1,275,000. Additionally, in its Motion for Summary Judgment, the county states the parties agree the property sold "for $1,275,000." Thus, either Bowman misspoke in reciting the figure of $1,250,000 or he felt the property was worth $25,000 less than the sale price. The court assumes the former to be the case (*i.e.*, that Bowman misspoke) and that the property actually sold for $1,275,000.

*Multnomah County Assessor*, 16 OTR-MD 242, 249 (2000), *citing Eyler v. Dept. of Rev.*, 14 OTR 160 (1997). *Direct Imports* and *Eyler* are distinguishable from the instant case because of the nature of the facts on which there was alleged to have been agreement. *Eyler* involved "perceived mistakes in the county's appraisal" such as rents, vacancy rates, and square footage. *Eyler*, 14 OTR at 162. The facts in *Direct Imports* concerned the size and age of the building, as well as its condition, operating expenses, roll value comparisons, and functional obsolescence. *Direct*, 16 OTR-MD at 244-46. The court in both cases determined there was enough equivocation on the critical facts to support the department's decision that there was not an agreement to facts.

In this case there are three important and unequivocal facts, plus other equivocal supporting facts. The unequivocal facts are (1) the sale at 60 percent of the roll value (a difference of $865,207), (2) the assessor's recommendation to the board to reduce the value to the sale price, and (3) the board's decision to reduce the value, presumably based on the sale and the assessor's recommendation. The equivocal facts include testimony by the county appraiser that the sale "appears to be * * * arm's length" and was "probably appropriate for the property."

■ Courts in Oregon have long recognized that a "recent" sale of the subject property can be persuasive evidence of value. *See Sabin v. Dept. of Rev.*, 270 Or 422, 426-27, 528 P2d 69 (1974); *Equity Land Res. v. Dept. of Rev.*, 268 Or 410, 415, 521 P2d 324 (1974); *Kem v. Dept. of Rev.*, 267 Or 111, 114, 514 P2d 1335 (1973). The two important considerations are whether the sale was "recent" and whether it was "arm's-length."

In *Sabin*, the Supreme Court overturned the Tax Court's rejection of the owner's sale of roughly half of the subject property nearly two years after the assessment date. The court found that there was no evidence in the record of a change in market conditions between the January 1, 1971, assessment date and the November 1972 sale, to warrant the Tax Court's decision to not consider that sale as an indicator of value. *Sabin*, 270 Or at 427-28. The court noted that a sale is a good indicator if it occurs within a "reasonable" time of

the assessment date. *Sabin*, 270 Or at 426. The court went on to say:

> "Whether a transaction is so recent as to be persuasive of present value will depend upon the similarity of conditions affecting value at the time of the transaction and conditions affecting value at the time of the assessment. The interval between the transaction in the subject property sought to be introduced and the assessment date may be so great that it can be said as a matter of law that there was a change in conditions. However, *where this determination cannot be made as a matter of law, reference must be made to the underlying conditions affecting value before such evidence can be rejected.* These principles apply equally to transactions in the assessed property before and after valuation date."

*Sabin*, 270 Or at 426-27 (footnoted citations omitted; emphasis added). The language in the quotation above suggests that the department ought to hold the merits hearing to consider the substantive issue in the petition where there is a great disparity between the roll value and the sale price to determine if the sale is persuasive of value.

The sale in this case occurred in March 2000, and the assessment dates were January 1, 1999, and January 1, 1998. The interval between the assessment dates and the sale of the property was 15 months and 27 months respectively. *Sabin* involved a 23-month interlude. The county appraiser acknowledged the sale appeared to be arm's-length and that the amount of the sale was probably appropriate. The information before the department was sufficient to move the matter forward to a hearing on the merits. The court concludes that the department did not act "capriciously or arrive[ ] at a conclusion which was clearly wrong." *Eyler*, 14 OTR at 162 (citations omitted; internal quotations omitted).

## III. CONCLUSION

The court has carefully reviewed all of the county's claims and concludes that the department did not abuse its discretion under ORS 306.115 by accepting the petition for the years at issue and determining that there was sufficient

agreement to the critical facts necessary to move the case forward and consider the substantive issue and the petition. The department's procedures comported with applicable statutes and rules and the department applied the correct standard in reviewing the facts. Now, therefore,

IT IS THE DECISION OF THIS COURT that the county's appeal is denied.