DECISION
Plaintiff appeals the 2009-10 real market value of property identified as Account R165316 (subject property). A trial was held in the Pioneer Courthouse, Portland, Oregon on October 28, 2010. W. Scott Phinney, Attorney at Law, appeared on behalf of Plaintiff. Plaintiff and Mona St. Clair (St. Clair), real estate broker, testified on behalf of Plaintiff. Stephen L. Madkour, Assistant Multnomah County Attorney, appeared on behalf of Defendant. Leanne Holz (Holz), registered appraiser, and Richard Sanderman (Sanderman) testified on behalf of Defendant.
Plaintiff's Exhibits 1, 2, 3, 4, and 6 were received without objection. Plaintiff's Exhibit 5 was received with objection.
 I. STATEMENT OF FACTS
Plaintiff testified that, on December 23, 2009, he purchased the subject property at a "short sale." He testified that, in August 2009, [1] he offered $510,000 for the subject property and after four months of negotiation among the parties, including the bank holding the mortgage on the subject property, a purchase price of $566,000 was agreed. Plaintiff concluded that the *Page 2 
2009-10 real market value of the subject property is his purchase price adjusted to the tax assessment date of January 1, 2009, resulting in an indicated real market value of $622,600. (Ptf's Trial Memo at 3.)
The subject property was described in the realtor's marketing flyer as:
 "Beautiful Custom 7 Bedroom Home, excellent view of the valley. Exquisite attention to detail, 2 of everything (2 full kitchen w/ granite countertops, 2 dining rooms, 2 nooks, 2 living rooms), multiple balconies, patio, baywindows, 22' Ceiling, Central A/C, Security System, Built-ins, Media room, Bonus room, Den, office! SHORT SALE.
(Ptf's Ex 3-1.) Plaintiff characterized the purchase as a "good deal" for him because the price "was dropping" from its original February 2009 listing price of $1,625,000 and there were "defects" that he knew needed to be "fixed over time." Plaintiff testified that the subject property's "defects" or functional problems included the "44 steps to the living area," two "complete kitchens," "stucco (EIFS) siding," inoperable air conditioners and central vacuum, "flat roof," "standing water on decks," "no access to backyard or garage from the main living [second floor] area," and a "water fountain in backyard" that was "too expensive to move" and, given its size of 25 feet by 12 feet, "takes away" much of the backyard. He testified that the room identified in the property listing as a "media room" is located on the first level adjacent to the garage; he testified that there is "nothing set-up" for "media," including speakers, there is "too much light" coming into the room and the hardwood floor creates an "echo."
St. Clair testified that the subject property was marketed for over ten months and that the "main marketing obstacle" was the floor plan with its "three levels and stairs." She testified that, in setting the price of the subject property, it "was reasonable to allow for an incurable floor plan." St. Clair selected various properties that sold in January 2009 and December 2009 to *Page 3 
support a conclusion that it is appropriate to adjust the subject property's value for "[f]unctional [o]bsolescence 25% for four story configuration, very steep driveway, and duplicate living spaces." (Ptf's Ex 5.) She testified that the subject property's value should be adjusted for "condition 10% for removed fixtures, equipment and damage." (Id.) In response to Defendant's questions, St. Clair testified that she did not inspect "any of the homes selected," and that each was selected because the property was located in "high end areas" and had a "view."
Holz, a registered appraiser employed for the last five years by Defendant, testified that, in determining the subject property's real market value, she considered all three approaches to value: cost, income and sales and market. She testified that the cost approach is "not as valid" for the subject property because the cost approach works best for "brand new property" and the subject property was built in 2001. Holz testified that the income approach is "not valid" because the subject property is "not a rental property." She testified that her report relied on the "market approach," "gathering similar properties, same as the subject." Holz testified that the comparable properties were all located in "Forest Heights" like the subject property and similar in "size, bathroom count, lots, view, garages." She testified that the only adjustment made to the comparable properties was a time adjustment to bring the sale price to the assessment date. Holz stated that, if adjustments were made for lot size, gross living area, number of bedrooms and bathrooms and other similar items, the indicated real market value would be higher than the $1,009,000 real market proposed by her. Holz was asked whether "all" adjustments would "increase" the sale price and she admitted that some adjustments like the lot size of comparable 1, age of comparable 3, and functioning air conditioning for each of the three comparables would decrease the sale price. Holz testified that she wanted to "account for [the subject property's] possible inferior appeal to the market." She testified that other potential *Page 4 
adjustments were not made, resulting in a reconciliation "to the low end" of the subject property's real market value.
St. Clair and Holz were asked numerous questions about "short sales." St. Clair testified that a "short sale" has "nothing to do with the buyer" and, in her experience, all "sellers are motivated" to "get the best selling price." Holz testified that she did not consider the subject property's sale as a comparable sale for her sales or market approach or a reliable indicator of real market value. She testified that "short sales" are not "comparable" because "offers generally are not accepted and there is a long time to come to negotiated price." Plaintiff's attorney challenged Holz's conclusion, stating that if "the sale [is] at arm's length and involve[s] a knowledgeable and willing buyer and seller," then "[t]he sale price of the subject property is very persuasive evidence of the market value of the property," citing Kem
(Kem) v. Dept. of Rev., 207 OR 111, 514 P2d 1335 (1973). (Ptf's Trial Memo at 2.) Plaintiff's attorney continued stating that "[i]f the sale price is not at variance with the prices paid for other similar properties and is not discredited it is one of the best standards for the estimation of market value," citingEquity Land Res.(Equity) v. Dept. of Rev.,268 Or 410, 521 P2d 324 (1974). (Id.) Holz was asked if she disputed that the sale was arm's length and between a knowledgeable willing buyer and seller. Holz responded, testifying that the sale was a "short sale" because the "seller was under duress," facing "foreclosure," and the subject property was "bank-owned." She testified that the prior owner of the subject property received "a notice of default" in September 2009 from the lender because that owner "failed" to make mortgage "payments" beginning in "May 2009." Holz testified that, "according to public documents, the subject [property] was scheduled to be sold at public auction on the courthouse steps on 1/19/10." She testified that the subject property's sale price was at variance with the prices paid for other similar properties she used as *Page 5 
comparable sales in her market approach. St. Clair testified that "over one-half of the sales" are "short sales," making those sales a part of the market.
Sanderman testified that Defendant's 2009-10 real market value of $1,009,000 would result in a property tax refund for Plaintiff. He testified that "the compression point" for the subject property begins at a real market value of approximately $1,230,000.
 II. ANALYSIS
The issue before the court is the 2009-10 real market value of Plaintiff's property. "Real market value is the standard used throughout the ad valorem statutes except for special assessments."Richardson v. Clackamas County Assessor, TC-MD No 020869D, WL 21263620, at *2 (Mar 26, 2003) (citing Gangle v. Dept. ofRev., 13 OTR 343, 345 (1995)). Real market value is defined in ORS 308.205(1), [2] which reads:
 "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's length transaction occurring as of the assessment date for the tax year."
A. Purchase of subject property
Plaintiff's determination of real market value relies solely on his purchase price adjusted for the almost twelve month difference between the purchase date and assessment date. Plaintiff presented no other evidence. The sales price of a recent, voluntary, arm's-length sale of property between a willing buyer and seller, both of whom are knowledgeable, although not conclusive, is very persuasive of market value. Kem, 267 Or at 114. See alsoSabin v. Dept. of Rev., 270 Or 422, 426-27, 528 P.2d 69 (1974);Equity, 268 Or at 415. The two important considerations are whether the sale was "recent" and whether it was "arm's-length." *Page 6 
Plaintiff relies on the Oregon Supreme Court holding inEquity:
 "In the absence of being discredited by any special considerations or by comparable transactions which indicate that the price paid was out of line with other market data material, we believe it to be one of the best and most satisfactory standards for the estimate of actual value although, admittedly, it is not conclusive. See Kem v. Dept. of Rev., 267 Or 111, 114, 514 P2d 1335, 1337 (1973)."
Id.
Defendant challenged Plaintiff's conclusion that Plaintiff's purchase price was the best estimate of the subject property's market value. Defendant's evidence of three comparable sales that were only adjusted for time indicated "that the price [Plaintiff] paid was out of line with other market data material."Id.
"In all proceedings before the judge or a magistrate of the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the party seeking affirmative relief." ORS 305.427 (emphasis added). Plaintiff must establish his claim "by a preponderance of the evidence, or the more convincing or greater weight of evidence." Schaefer v. Dept. of Rev., TC No 4530, WL 914208 *2, (July 12, 2001) (citing Feves v. Dept. of Rev.,4 OTR 302 (1971)). This court has stated that "it is not enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the RMV of their property."Poddar v. Dept. of Rev., 18 OTR 324, 332 (2005) (quotingWoods v. Dept. of Rev., 16 OTR 56, 59 (2002) (citation omitted.)
Plaintiff alleged that "short sales" of comparable properties would support his purchase price and real market value. Plaintiff presented no evidence of comparable "short sales" and how those sales support his determinations of real market value. Plaintiff submitted no evidence to persuade the court that "short sales" support his indicated real market value as of the assessment date. Defendant's evidence strongly suggests that Plaintiff's purchase price "was out *Page 7 
of line with other market date material" and not the subject property's real market value at the date of purchase and the assessment date. Equity, 268 Or at 415. Plaintiff failed to carry his burden of proof because Plaintiff's allegation was not supported.
B. Approaches of Valuation — Real Market Value
There are three approaches of valuation (cost, income, and comparable sales) that must be considered in determining the real market value of a property even if one of the approaches is found to not be applicable. See
ORS 308.205(2) and OAR 150-308.205-(A)(2). Because the subject property is the primary residence of Plaintiff, the income approach is not applicable. Neither party considered the cost approach as applicable.
In a case such as the one before the court, the comparable sales approach "may be used to value improved properties, vacant land, or land being considered as though vacant." Chambers Management Corpand McKenzie River Motors v. Lane County Assessor, TC-MD No 060354D at 6 (Apr 3, 2007), citing Appraisal Institute,The Appraisal of Real Estate 335 (12th ed 2001). Plaintiff did not present an appraisal report. Plaintiff's witness, St. Clair, selected properties located outside of the Forest Heights neighborhood using view and "high end" as the defining characteristic for the two time periods, early 2009 and late 2009. To those identified properties, St. Clair adjusted the sale price for an estimated functional obsolescence, condition, and lot size. St. Clair did not inspect any of those comparable properties, included two remodeled properties originally built in 1900 and 1926 among her comparables, and the selected properties' comparability of each property to the subject property was not confirmed. She provided no support for her adjustment percentages, relying solely on her experience. Without additional evidence, the court is not persuaded that the adjusted sale prices support the subject property's *Page 8 
price per square foot as of the assessment date. Plaintiff's comparable sales approach does not meet the statutory requirement.
 III. CONCLUSION
After careful consideration of the testimony and evidence, the court concludes that Plaintiff failed to carry its burden of proof. Defendant concluded that the subject property's real market value as of January 1, 2009, is $1,009,000. Even though Defendant's comparable sales approach was incomplete, the court accepts Defendant's real market value determination, allowing Plaintiff the real market value offered by Defendant. Now, therefore,
IT IS THE DECISION OF THIS COURT that the 2009-10 real market value of Plaintiff's property identified as Account R165316 is $1,009,000.
Dated this ___ day of February 2011.
If you want to appeal this Decision, file a Complaint in theRegular Division of the Oregon Tax Court, by mailing to:1163 State Street, Salem, OR 97301-2563; or by hand delivery to:Fourth Floor, 1241 State Street, Salem, OR.
 Your Complaint must be submitted within 60 days after the dateof the Decision or this Decision becomes final and cannot bechanged.
 This document was signed by Presiding Magistrate Jill A.Tanner on February 9, 2011. The Court filed and entered thisdocument on February 9, 2011.
[1] Plaintiff's Exhibit 2-1 states that the parties entered into a "purchase contract" on June 2, 2009, and Plaintiff's Exhibit 2-3 states that the contract was dated June 3, 2009.
[2] References to the Oregon Revised Statutes (ORS) are to year 2007. *Page 1