IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

| | | |
|---|---|---|
| SCOTT GOODSELL, | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 250137R (Control) |
| | ) | |
| v. | ) | |
| | ) | |
| KLAMATH COUNTY ASSESSOR, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| SCOTT GOODSELL, | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 250138R |
| | ) | |
| v. | ) | |
| | ) | |
| KLAMATH COUNTY ASSESSOR, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| SCOTT GOODSELL, | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 250139R |
| | ) | |
| v. | ) | |
| | ) | |
| KLAMATH COUNTY ASSESSOR, | ) | |
| | ) | |
| Defendant. | ) | **DECISION** |

Plaintiff appeals the Klamath County Property Value Appeals Board (PVAB) orders

mailed March 7, 2025, regarding property tax accounts 414242, 763711 and 763720 (subject

properties) for the 2024-25 tax year. Plaintiff's three tax court appeals were consolidated. A

remote trial was held on November 19, 2025, via WebEx. Scott Goodsell (Goodsell) appeared

and testified on his own behalf. Jeremiah Hernandez (Hernandez), Chief Appraiser for Klamath

County, testified as an adverse witness during Plaintiff's case-in-chief but presented no independent testimony or valuation evidence.

Prior to trial, Plaintiff filed three motions in limine seeking, among other things, to exclude any evidence from Defendant that contradicts the tax roll value and Defendant's statements before PVAB. The court denied Plaintiff's motions because proceedings in the Oregon Tax Court are *de novo* and counties are not barred from (or required to) present evidence as to a different value at trial. Additionally, Defendant declined to submit any evidence at trial, and thus Plaintiff's motion became moot.

Plaintiff's Exhibit 1 was received into evidence. Plaintiff's Exhibits A to D, attached to his first motion in limine, were not received into evidence for failure to comply with Tax Court Rule-Magistrate Division (TCR-MD 12). For its part, Defendant submitted but did not seek introduction of Exhibit A, so it was not received into evidence.

## I. STATEMENT OF FACTS

Defendant assessed—and the PVAB confirmed—values for the subject properties as follows for the 2024-25 tax year:

| Description | Assessed Value |
|---|---|
| **Account 414242** | |
| Land | $21,880 |
| Structures | $116,430 |
| Total RMV | $138,310 |
| | |
| **Account 763711** | |
| Land | $22,720 |
| Structures | $225,089 |
| Total RMV | $247,809 |
| | |
| **Account 763720** | |
| Land | $25,500 |
| Structures | $336,490 |
| Total RMV | $361,990 |

(Compls at 2.)  Plaintiff purchased the subject properties in a single transaction for $300,000 on January 16, 2024.  (Ptf's Ex 1.)  The settlement statement does not allocate the total sales price across the individual properties.  (*Id.*)

At trial, Hernandez testified as to observations he made during a mutually-agreed-to site inspection in May 2025.  Goodsell referred to the subject properties collectively as the "Gospel Mission complex," and Hernandez testified that he does not know when the complex was built.  The first property contains a former triplex in severely deteriorated condition.  Testimony established that the structure lacks basic utilities, including plumbing and heating, and is uninhabitable.[1]  Plaintiff further testified that the building burned approximately 10 to 12 years ago and remains unrepaired and that the sewer line is blocked.

The second property contains two buildings, including a guest house and a dining hall.  Testimony established that, prior to Plaintiff's acquisition, the improvements suffered from significantly deferred maintenance and functional deficiencies, including the absence of bathrooms in the dining hall and limited or inadequate utility systems.  Plaintiff has undertaken some repairs to the guest house, but the overall condition of the improvements remains impaired.

The third property includes multiple structures associated with the complex, including a chapel and dormitory.  Testimony established that the property's geothermal system was partially inoperable, resulting in a lack of hot water across much of the complex.

/ / /

/ / /

/ / /

/ / /

---

[1] The established testimony refers to testimony given or agreed upon by both parties.

At some point, the Klamath Falls Gospel Mission (GM) acquired the subject properties and, prior to its sale to Goodsell, used them as an operating facility for rehab and housing programs. The properties were used together as a single, integrated facility for those programs. Over time, the properties fell into disrepair, and all use of the properties was ultimately discontinued prior to Plaintiff's purchase.

Plaintiff testified that, in 2022, GM put the subject properties on the market through a real estate broker in Klamath. The initial asking price advertised was $450,000. After a few months the price dropped to $400,000, then to $350,000 three months later, and finally to $300,000 in September 2023. No evidence was presented of foreclosure, bankruptcy, condemnation, or other compulsion affecting the sale. The evidence indicates the property was marketed over an extended period with multiple price reductions before Plaintiff offered the final asking price.

Plaintiff testified that he had been looking for "a special purpose property" for a project that was at least 18-24 months away from stabilization. He found the subject properties on the commercial real estate website LoopNet and offered the full asking price, conditioned only on an inspection of the guest house foundation. He paid cash. As such, no bank was involved, and no formal appraisal was required. The transaction closed on January 16, 2024. All three subject properties were purchased together for one sum.

Plaintiff does not challenge the land values assigned to the three properties. Based on the condition, age, and required rehabilitation of the improvements, Plaintiff testified that a greater portion of the purchase price should be attributable to the value of the land, with reduced values attributable to the improvements. Plaintiff requested the following values:

/ / /

| Description | Assessed Value |
|---|---|
| **Account 414242** | |
| Land | $21,880 |
| Structures | $30,000 |
| Total RMV | $51,880 |
| | |
| **Account 763711** | |
| Land | $22,720 |
| Structures | $101,000 |
| Total RMV | $123,720 |
| | |
| **Account 763720** | |
| Land | $25,500 |
| Structures | $100,000 |
| Total RMV | $125,500 |

(*See also* Compls at 1-2.)  Plaintiff also testified that he believes the total RMV for all three properties combined is $300,000.[2]

## II.  ANALYSIS

At issue in this case is the subject properties' real market value (RMV) for the 2024-25 tax year.  The assessment date for the 2024-25 tax year was January 1, 2024.  *See* ORS 308.007(2).[3]  This court has jurisdiction to determine RMV "on the basis of the evidence before the court, without regard to the values pleaded by the parties."  ORS 305.412.

Plaintiff bears the burden of proof by a preponderance of the evidence.  ORS 305.427.  A preponderance of the evidence means the more convincing or greater weight of evidence.  *Feves v. Dept. of Rev.*, 4 OTR 302, 312 (1971).

Once a party introduces substantial evidence of a different value, the burden of going forward shifts to the opposing party to rebut the evidence.  *Publishers Paper Co. v. Dept. of Rev.*,

---

[2] The court observes a discrepancy in Plaintiff's testimony.  Namely, the individual RMVs as stated sum to $301,100, while other testimony and evidence support Plaintiff's belief that the combined RMV is $300,000.

[3] The court's references to the Oregon Revised Statutes (ORS) are to the 2023 edition.

270 Or 737, 744-45, 530 P2d 88 (1974), holding modified on other grounds by *Reynolds Metals Co. v. Dept. of Rev.*, 299 Or 592, 705 P2d 712 (1985).

RMV is "the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion[.]" ORS 308.205(1). A recent, voluntary, arm's-length sale between knowledgeable parties is very persuasive of the market value. *Kem v. Dept. of Rev.,* 267 Or 111, 114, 514 P2d 1335 (1973); *see also Chen v. Multnomah County Assessor*, TC-MD 120471D, 2013 WL 634593 at *2 (Or Tax M Div, Feb 20, 2013) (citing *Kem* where the plaintiff relied solely on his purchase price to support determination of RMV). Whether a sale meets that criteria is a question of fact. *Miller v. Dept. of Rev.*, 327 Or 129, 137, 958 P2d 833 (1998).

A.    *Subject Properties' Purchase Price as RMV*

Here, Plaintiff relies primarily on his purchase price to determine the subject properties' RMV.[4] In evaluating the facts concerning the subject properties' sale to Plaintiff, the court considers the three factors delineated in *Kem*: whether the sale was (1) recent, (2) voluntary, and (3) made at arm's length between knowledgeable parties.

1.    *Recent*

Plaintiff purchased all three properties on January 16, 2024, approximately two weeks after the January 1, 2024, assessment date. The court finds the sale to be recent.

2.    *Voluntary*

The record contains no evidence of foreclosure, bankruptcy, condemnation, or other compulsion affecting the sale. The properties were marketed publicly over an extended period

---

[4] Unlike the plaintiff in *Chen*, Plaintiff here does not solely rely on the purchase price; he supports that evidence with significant testimony as to the condition of the subject properties' improvements.

with multiple price reductions before Plaintiff offered the final asking price. Such exposure to the market is consistent with a voluntary sale. *See Equity Land Resources, Inc. v. Dept. of Rev.*, 268 Or 410, 414 (1974). Although Defendant suggested in its closing argument that the sale may have been "distressed," it presented no supporting evidence. On this record, the court finds the sale was voluntary.

3.   *Arm's-length transaction between knowledgeable parties*

The parties were unrelated, the seller was represented by a broker, and the properties were marketed on LoopNet. Plaintiff monitored the listing and offered the then-current asking price. Defendant presented no evidence to rebut Plaintiff's testimony. The court therefore finds the transaction was an arm's-length sale between knowledgeable parties.

4.   *Determination of RMV*

Having found that both parties to the subject properties' sale acted voluntarily, knowledgeably, willingly, and at arm's length, the court concludes the January 16, 2024, $300,000 sale price to be very persuasive of the subject properties' 2024-25 RMV. The remaining issue is whether Plaintiff's evidence was sufficient to meet his burden of proof. To reiterate, Plaintiff introduced evidence of the recent sale of the properties and testimony – his own and the largely corroborating testimony of Defendant's own appraiser – describing significant deferred maintenance, lack of utilities, and functional deficiencies affecting the improvements. This evidence supports the conclusion that the purchase price reflects the properties' condition and marketability. Plaintiff therefore met the burden of proof by a preponderance of the evidence. Defendant presented no rebuttal evidence.

/ / /

/ / /

Given the limited record, the global purchase price is the only credible figure supported by evidence. The court finds that the combined RMV of the three properties as of January 1, 2024, was $300,000.

B.      *Allocation of Value*

With the combined RMV of the subject properties determined, the court turns to the issue of how the value should be allocated. Plaintiff gave no parcel-specific valuation, and Defendant did not provide any allocation or appraisal. However, ORS 310.160(1) allows the court to treat contiguous, commonly owned, integrated properties as a "unit of property." The testimony shows that these parcels were historically used, marketed, and sold together as a single complex.[5] Plaintiff also intends to continue using them for a unified purpose. The court therefore concludes that the properties may be valued as one unit for purposes of determining RMV. Because Plaintiff did not dispute the subject properties' land values and the combined RMV is $300,000,[6] the court leaves the land values unchanged and finds the total improvement value is $229,900 ($300,000 minus $70,100 in land values).

## III.  CONCLUSION

After careful consideration, the court holds that the subject properties shall be valued as a single unit of property with a total RMV of $300,000 for the 2024-25 tax year. The component land values of each account shall remain unchanged. Now, therefore,

/ / /

---

[5] To the extent that this issue – whether the subject properties are accurately characterized as a unit of property under ORS 310.160(1) – was not raised by the pleadings, the court understands this issue to have been tried by implied consent of the parties. Therefore, the court treats the pleadings as amended to conform to the evidence. Tax Court Rule 23 B; Preface to the TCR-MD (the rules of the Regular Division may be used as a guide to the extent relevant).

[6] Under *Nepom v. Department of Revenue*, 272 Or 249, 256 (1975), taxpayers may challenge improvement values without challenging land values.

IT IS THE DECISION OF THIS COURT that Plaintiff's appeals are granted. The court orders Defendant to allocate $229,900 across the improvement values of accounts 414242, 763711, and 763720.

RICHARD D. DAVIS
MAGISTRATE

***If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.***

***Your complaint must be submitted within <u>60</u> days after the date of this Decision or this Decision cannot be changed. TCR-MD 19 B.***

***This document was signed by Magistrate Richard D. Davis and entered on April 6, 2026.***