DECISION
Plaintiffs appeal the Deschutes County Board of Property Tax Appeals Order, dated March 5, 2010, determining the 2009-10 real market value of their property identified as Account 209042. A telephone trial was held by Magistrate Jeffrey Mattson on November 10, 2010. Plaintiffs appeared and testified on their own behalf. Josh Hansen (Hansen), a licensed Oregon real estate agent since 2000, testified on behalf of Plaintiffs. Rebecca Oja (Oja), registered Oregon appraiser, appeared and testified on behalf of Defendant.
 I. STATEMENT OF FACTS
Plaintiffs appeal the real market value of their subject property, a .37 acre parcel located in the River Canyon Estates subdivision in Bend, Oregon. Plaintiffs testified that they offered to purchase the subject property in February, 2009, and their purchase of the subject property closed in May 2009, paying their offering price of $125,000. (Ptfs' ltr, Nov 10, 2009.)
Hansen testified about the Bend real estate market and specifically River Canyon Estates lot sales, where the subject property is located. (Ptfs' Ex G.) He recited that between "March 24th, 2009 and May 28th
of 2009, 5 other purchases of identical lots were made (subject property included.) At an average sold price of $105,322, the sold prices of all 6 of these lots were exactly in line with the Bend's average lot sales price of $103,000 seen during December of *Page 2 
2008. * * * Market value during the months of February — June of 2009 reflected no change from December of 2008." (Ptfs' Ex G at 3.) Hansen noted that apparently the "Deschutes County tax assessor" shared his conclusions about real market value of bare land because "Deschutes County reevaluated" a "vacant lot identical to subject property" and "changed the assessed value for 2009 to $150,000, still much higher than real market value, but very telling nonetheless." (Id.) Hansen concluded that the subject property "as a bare lot, had a market value of $130,000." (Id.) Hansen testified that "an existing stem wall and partial foundation" were on the subject property. (Id.) He concluded that "the risk and potential problems with an existing foundation causes a reduction in market value of approximately $10,000." (Id.) Hansen summarized his opinion of value:
 "Given the subject property value of $130,000, deducting $10,000 for the potential risk in dealing with the existing foundation, taking all of the data available on lot sales and horrible condition of the housing market, the astronomical amount of inventory in December 2008 and January 2009, and seeing the Deschutes County Assessor drastically drop the assessed value of a comparable lot, my final opinion of value for the subject property as of January 1st, 2009, is $120,000."
(Id.) Oja's Valuation Summary included a detailed description of River Canyon Estates that was developed by D. R. Horton. (Def's Ex A at 1.) She noted that until February 2009, D. R. Horton "offered land/home packages to buyers [and] [o]nly one lot sale occurred prior to 2008 as lots were not openly available for purchase." (Id.) At the time Plaintiffs offered to purchase the subject property it was listed by D. R. Horton for $838,939, for the lot and home package, noting that it had a foundation. (Def's Ex E at 3.) Oja stated:
 "During the sell out of the last remaining homes, DR Horton began offering the remaining eight lots for purchase (see exhibit E-2). All remaining lots were along the canyon and sized near or above one-quarter acre. Asking prices ranged from $159,000 to $260,000 (see exhibit E-3). These prices were not adjusted until February 2009, when DR Horton dropped all listings to $109,900 (see exhibit E-4). In the appraiser's experience a dramatic decline of this nature is typically evidence of developer liquidation, in order to withdraw from a completed development." *Page 3 
(Def's Ex A at 1.) Oja concluded that "[d]ue to the liquidation pricing on lots within River Canyon Estates," the "land residual technique was applied" to "[t]en improved canyon lot sales within the subject subdivision." (Id.) She explained that "[i]n this process the improvement is valued by using a market related cost approach." (Id.) Oja testified that "[t]his analysis revealed consistent land valuations far above DR Horton's liquidation sales (see exhibit B-1). The analysis also indicated a value increase according to size; lots greater than .35 acres [like the subject property] indicated a lot value of $230,000." (Id.)
Oja testified that "[i]n addition to these land residual findings, a paired sales analysis was performed. (Id. at 2.) She concluded that "a lot `premium' [is] paid in addition to the standard lot value" for canyon lots and "[t]his premium further exemplifies that the requested total value of $125,000 is below fair market value." (Id.) To this data, Oja reviewed time trended 2006 sales in River Park Estates, a "competing neighborhood." (Id.) She concluded that "[t]his data indicates a lot value near $300,000 (see exhibit D). This lot has superior views, however it is felt the $300,000 supports land values far above the DR Horton liquidation prices." (Id.) Oja provided extensive documentation for each appraisal method. (Def's Ex A through G.) She concluded by stating that "[i]n each of the valuation processes performed by the Defendant, the current roll value for 1/1/09 of $230,000 is supported or exceeded." (Def's Ex H.) Oja stated that she gave the most "weight" * * * to the subject subdivision land residual method, as lot only sales were not offered prior to the builder liquidation." (Id.) She explained that the "rapid and drastic decline of listing prices coupled with the quick sell-out is exemplary of a developer's attempt to withdraw from a development." (Id.) *Page 4 
 II. ANALYSIS
The issue before the court is the 2009-10 real market value of Plaintiffs' property. Real market value is the standard used throughout the ad valorem statutes except for special assessments. See Richardson v. Clackamas County Assessor, TC-MD No 020869D, WL 21263620, at *2 (Mar 26, 2003) (citing Gangle v. Dept. ofRev., 13 OTR 343, 345 (1995)). Real market value is defined in ORS 308.205(1), [1] which reads:
 "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."
A. Purchase Price
The sale price of a recent, voluntary, arm's-length sale of property between a willing buyer and seller, both of whom are knowledgeable, although not conclusive, is very persuasive of market value. Kem v. Dept. of Rev.,267 Or 111, 114, 514, P2d 1335 (1973). See alsoSabin v. Dept. of Rev., 270 Or 422, 426-27, 528 P2d 69 (1974); and Equity Land Res. v. Dept. of Rev.,268 Or 410, 415, 521 P2d 324 (1974). The two important considerations are whether the sale was "recent" and whether it was "arm's-length." Id. Plaintiffs offered to purchase the subject property a month after the assessment date and their offering price was accepted. At the time Plaintiffs offered to purchase the subject property there were eight lots offered for sale by the developer. As of the date of assessment, the subject property and other lots were offered for sale at listing prices ranging from $159,000 to $260,000. (Def s Ex E-3.) Even though there was a willing seller, D. R. Horton, there were no willing buyers. A reasonable conclusion is that the listing prices were not acceptable to the market and therefore those listing prices were not real market value. One willing buyer came forward in February 2009 (Plaintiffs) and five other *Page 5 
willing buyers came forward in March 2009 through May 2009. (Ptfs' Ex A.) Plaintiffs paid $125,000 for the subject property. Four of the buyers paid $100,000 and one paid $106,933. (Id.) All lots were located in the same subdivision, receiving the same amenities as the subject property. The seller willingly sold the lots at below the listing prices that were reduced in February 2009. The seller and buyers set the market. Because those sales were recent and between a willing seller and willing buyers, the real market value of the lots, including the subject property, were determined. Plaintiffs' purchase price, $125,000, was the real market value as of the assessment date, January 1, 2009.
B. Approaches of Valuation: Real Market Value
There are three approaches of valuation (cost, income, and comparable sales) that must be considered in determining the real market value of a property even if one of the approaches is found to not be applicable. See
ORS 308.205(2) and OAR 150-308.205-(A)(2). Oja submitted a market related cost approach combined with a land residual approach along with a paired sales analysis to support Defendant's determination of real market value. Even though her analysis was complete and well documented, Oja's determination of real market value relied heavily on improved sales prior to the assessment date, specifically among others a July 2008 sale of a lot similar in size to the subject property but with one important difference: it was an improved property. (Def s Ex B at 1.) As of the assessment date, the subject property was an unimproved lot with a foundation that may or may not have fit Plaintiffs' ultimate house plan. There is no evidence the foundation increased or decreased the value of the unimproved land. *Page 6 
The court's reliance on the sale of unimproved lots eliminates the subjectivity associated with the land residual approach and the subtraction of a computed contribution of improvements to real market value. The sale of unimproved land close to the assessment date supports Plaintiffs' requested real market value.
 III. CONCLUSION
After careful consideration of the testimony and evidence, the court concludes that the 2009-10 real market value of Plaintiffs' subject property was $125, 000. Now, therefore,
IT IS THE DECISION OF THIS COURT that the 2009-10 real market value of Plaintiffs' subject property identified as Account 209042 was $125,000.
Dated this ___ day of March 2011.
If you want to appeal this Decision, file a Complaint in theRegular Division of the Oregon Tax Court, by mailing to:1163 State Street, Salem, OR 97301-2563; or by hand delivery to:Fourth Floor, 1241 State Street, Salem, OR.
 Your Complaint must be submitted within 60 days after the dateof the Decision or this Decision becomes final and cannot bechanged.
 This document was signed by Presiding Magistrate Jill A.Tanner on March 28, 2011. The Court filed and entered this documenton March 28, 2011.
[1] References to the Oregon Revised Statutes (ORS) are to year 2007.