DECISION
Plaintiff appeals the 2009-10 real market value of property identified as Account 1556677 (subject property). A telephone trial was conducted by Magistrate Jeffrey S. Mattson on November 23, 2010. Plaintiff appeared and testified on his own behalf. Bryce Krehbiel (Krehbiel), Registered Appraiser III, Lane County Department of Assessment and Taxation, appeared and testified. Mike Cowles (Cowles), Senior Dales Data Analyst, Lane County Department of Assessment and Taxation, testified.
Defendant's Exhibits A through O were admitted.
 I. STATEMENT OF FACTS
The subject property is a 4,119 two story house built in 2000. (Def's Ex D.) Plaintiff testified that he purchased the subject property as a "rental" property, paying $420,000 as stated in a special warranty deed recorded on January 12, 2009. Plaintiff testified that based on his personal experience as an builder with 30 years experience he believes his purchase price is the real market value as of January 1, 2009. He appeals the Lane County Board of Property Tax Appeals Order, dated February 19, 2010, stating that the 2009-10 real market value was $626,059. *Page 2 
In a letter to the court and Defendant dated October 20, 2010, Plaintiff described his return on the subject property which he described as an "income property:"
 "It is leased for $2500.00 a month. After paying property taxes, maintenance, and leasing fee, it basically leaves $17,000.00 a year to pay the bank payment. If the house was purchased for $420,000, it basically gives you a 4% return on your money. * * * I'm currently paying to Umpqua Bank 6.75% interest for commercial loan. That's losing 2.5% interest for purchasing the house at $420,000."
Plaintiff submitted an undated letter from his real estate agent, Robert Olson, Emerald Valley Real Estate, who wrote:
 "In my opinion, at the time this residence was purchased by my client, 3289 Wintercreek Dr was valued at the purchase price of $420,000. There were many other homes in the area that were comparable with this one, and if you have done your homework, you will find out that this home was purchased well within the comps."
(Id. at 2.) Plaintiff's December 5, 2010, letter offered the following information about the subject property:
 "The owner of the property was a builder and also a real estate investor. * * * The house originally was for sale shortly after it was built. It was on the market for 187 days in 2002. A couple of years later it was listed again. At that time it said that it was on the market for 243 days. The price was $599,900. * * * During this time the house had no reasonable offers. * * * Finally, in 2008, he decided to give it back to the bank because from his past experience the house wasn't sellable. He realized that he had no equity in the house, as he still owed approximately $480,000 and would have to pay at least $25,000 in closing costs, if the house sold."
To that letter, Plaintiff attached copies of the subject property's real estate listings. Defendant provided the subject property's listing history from the RMLSweb, stating that the subject property was listed on October 15, 2008 for $499,900 for 30 days and then the listing price was reduced to $485,900 on November 14, 2008. (Def's Ltr at 4, Nov 23, 2010.) Cowles testified that on September 15, 2008, title to the subject property was transferred from Regional Trustee Services Corporation to Indymac Bank FSB for total consideration of $486,000. (Def's Ex C.) *Page 3 
He testified that 61 days later the subject property was purchased by Plaintiff. Cowles testified that "the sale would not be useable in its ratio study" because it was a "foreclosure" or "short sale" and the sale was not at "real market value." Krehbiel supported Cowles' testimony, stating that:
 "Generally our position on the matter of foreclosed property is that it is a sale that neither meets the definition of an `arm's length' sale due to the transaction not being devoid of duress nor, are foreclosure sales the current `norm' in the marketplace."
(Def's Ex L at 2.)
Krehbiel, a registered Oregon appraiser, presented five properties he identified as comparable to the subject property. (Def's Ex J.) The five properties were sited on land ranging from .25 acre to .90 acre. (Id.) According to Krehbiel, the subject property is sited on .46 acre. (Id.) Krehbiel testified that each of the properties is comparable in class to the subject property. Plaintiff disputed Krehbiel's quality classification of "5 minus" for the subject property home, testifying that the subject property was built "very cheap, using $40.00 hollow core white doors. * * * The kitchen is very small with $60.00 steel sink." (Ptf's Compl at 3.) Krehbiel and another appraiser from the Lane County Department of Assessment and Taxation inspected the subject property, concluding that "[u]nder no circumstance would we suggest a change to a class 4 dwelling." (Def's Ltr at 1, June 10, 2010.) Krehbiel computed a price per square foot for the subject property, $102, and for each of the five comparable properties, ranging from "$128 time trended" to "$184 no time trend." (Def's Ex J.) He testified that the dates of sale were from June 2008 to October 2009. Krehbiel testified that he computed an average price per square foot of $158 and is recommending $143 per square foot, resulting in a real market value of $589,629 for the subject property. Plaintiff disputed the comparability of the five properties to the subject property. *Page 4 
 II. ANALYSIS
The issue before the court is the 2009-10 real market value of Plaintiffs' property. "Real market value is the standard used throughout the ad valorem statutes except for special assessments."Richardson v. Clackamas County Assessor, TC-MD No 020869D, WL 21263620 at *2 (Mar 26, 2003) (citing Gangle v. Dept. of Rev.,13 OTR 343, 345 (1995)). Real market value is defined in ORS 308.205(1), [1] which reads:
 "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's length transaction occurring as of the assessment date for the tax year."
A Purchase Price
The sale price of a recent, voluntary, arm's-length sale of property between a willing buyer and seller, both of whom are knowledgeable, although not conclusive, is very persuasive of market value.Kem v. Dept. of Rev., 267 Or 111, 114, 514, P2d 1335 (1973).See also Sabin v. Dept. of Rev.,270 Or 422, 426-27, 528 P2d 69 (1974); Equity Land Res. v. Dept. ofRev., 268 Or 410, 415, 521 P2d 324 (1974). The two important considerations are whether the sale was "recent" and whether it was "arm's-length." Id. Plaintiff's sale, which closed a few days after the assessment date, was recent. At the time of Plaintiff s purchase, the subject property was a bank-owned property. A property purchased through foreclosure may well involve an element of compulsion on the part of the seller. There are many practical reasons why the sale of a property following foreclosure by the lender might involve an atypical market condition rendering the transaction of little or no value as an indication of market value. For example, the lender may have a policy of selling such property only for the amount of the underlying debt, regardless of what the property may actually be worth, particularly if it would take a few months more to find *Page 5 
a buyer willing to pay a higher price. If so, the sale, at best, likely represents the low end of the real market value range, and may have been well below the actual market value of the property. In this case, the bank which owned the subject property sold it within a few months of listing the property and at a sale price substantially less than the listing price and possibly less than the prior owner's current balance on the loan to purchase the subject property. Plaintiff offered no competent evidence other than his own purchase price to support his belief that his purchase price was the subject property's real market value.
B. Approaches of Valuation — Real Market Value
There are three approaches of valuation (cost, income, and comparable sales) that must be considered in determining the real market value of a property even if one of the approaches is found to not be applicable. See ORS 308.205(2); OAR 150-308.205-(A)(2). The subject property is primarily a residential structure. Defendant presented a modified comparable sales approach. Plaintiff relied on his purchase price which occurred close to the assessment date. Neither party considered the cost approach or the income approach.
In a case such as the one before the court, the comparable sales approach "may be used to value improved properties, vacant land, or land being considered as though vacant." Chambers Management Corp andMcKenzie River Motors v. Lane County Assessor, TC-MD-No 060354D at 6 (Apr 3, 2007), citing Appraisal Institute, The Appraisalof Real Estate 335 (12th ed 2001). ORS 308.205(2) provides in pertinent part that "[r]eal market value in all cases shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue." The Department of Revenue adopted OAR 150-308.205-(A)(2)(c), stating that:
 "In utilizing the sales comparison approach only actual market transactions of property comparable to the subject, or adjusted to be comparable, will be used. All transactions utilized in the sales comparison approach must be verified to ensure they reflect arms-length market transactions." *Page 6 
Plaintiff did not present a comparable sales approach. Defendant's comparable sales approach was incomplete because none of the properties were "adjusted to be comparable" and there was no testimony stating that the sales had been verified. However, Defendant does not have the burden of proof.
"In all proceedings before the judge or a magistrate of the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the party seeking affirmative relief." ORS 305.427 (2009) (emphasis added). Plaintiff must establish his claim "by a preponderance of the evidence, or the more convincing or greater weight of evidence."Schaefer v. Dept. of Rev., TC No 4530 at 4 (July 12, 2001) (citingFeves v. Dept. of Rev., 4 OTR 302 (1971)). This court has stated that "it is not enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the RMV of their property."Poddar v. Dept. of Rev., 18 OTR 324, 332 (2005) (quotingWoods v. Dept. of Rev., 16 OTR 56, 59 (2002) (citation omitted.)
Plaintiff failed to carry the burden of proof. Even though Plaintiff's purchase of the subject property was recent, Plaintiff failed to provide any evidence other than an unsworn statement from his real estate agent that Plaintiff's purchase was an arm's length transaction confirming the real market value of the subject property as of the date of sale. Plaintiff did not present any competent evidence of the subject property's real market value as of the date of assessment, such as an appraisal report or testimony of an appraiser or other competent expert.
Even though Plaintiff failed to carry his burden of proof and the "burden of going forward with the evidence" has not shifted, the court has jurisdiction to determine the "real market value or correct valuation on the basis of the evidence pleaded by the parties". ORS 305.427; ORS 305.412. Defendant requests that the court accept its determination of the *Page 7 
subject property's real market value of $589,629. Krehbiel selected a price per square foot at the low end of the range of his five comparable properties. The court accepts Krehbiel's determination.
 III. CONCLUSION
After careful consideration of the testimony and evidence, the court concludes that Plaintiff failed to carry his burden of proof. The court accepts Defendant's determination of the subject property's real market value. Now, therefore,
IT IS THE DECISION OF THIS COURT that the 2009-10 real market value of Plaintiff's property identified as Account 1556677 was $589,629.
Dated this ___ day of March 2011.
If you want to appeal this Decision, file a Complaint in theRegular Division of the Oregon Tax Court, by mailing to:1163 State Street, Salem, OR 97301-2563; or by hand delivery to:Fourth Floor, 1241 State Street, Salem, OR.
 Your Complaint must be submitted within 60 days after the date ofthe Decision or this Decision becomes final and cannot be changed.
 This document was signed by Presiding Magistrate Jill A. Tanneron March 30, 2011. The Court filed and entered this documenton March 30, 2011.
[1] References to the Oregon Revised Statutes (ORS) are to year 2007. *Page 1