IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

MARY KENT LIVING TRUST,       )
                                         )
        Plaintiff,                )    TC-MD 110729D
                                         )
       v.                        )
                                         )
BENTON COUNTY ASSESSOR,      )
                                         )
        Defendant.          )    **DECISION**

Plaintiff appeals the 2010-11 real market value of property identified as Account 416978 (subject property). A trial was held in the Oregon Tax Court Mediation Center, Salem, Oregon, on October 24, 2011. Mary Kent (Kent) appeared on behalf of Plaintiff. Doug Hillpot (Hillpot), Benton County Assessor and Caleb Nelson (Nelson), Sale Data Analyst and Oregon registered appraiser, Benton County Assessment and Taxation, appeared on behalf of Defendant.

Plaintiff's Exhibits 1 through 9 and Defendant's Exhibits A through C were received without objection.

## I. STATEMENT OF FACTS

Kent testified that she purchased the subject property in 2005, paying $327,000. According to Nelson's appraisal report, the subject property is a four bedroom, three and one-half bathroom two story residence with a three car garage located on an .l9 acre lot in Albany, Oregon. (Def's Ex A at 7.) The parties agreed that the subject property was built in 2003 and placed on the tax roll in 2004. Kent testified that, when the subject property's real market value was "put on the rolls," it was "initially higher than the original owner's purchase price." She testified that she "probably should have appealed" when she purchased the property in 2005.

/ / /

Plaintiff relies on the sale of a neighboring property (referred to as the Greene's home) to support its requested real market value of $295,000. (Ptf's Ex 2 at 1.) Kent testified that the Greene's home is "most like the subject property with similar features and amenities, closest in proximity to the subject property, and has a similar property tax base like the subject property." Kent testified that she believes that purchasers look at the assessed value and total property tax obligation when deciding to purchase a residence. The parties discussed whether property taxes are reflected in the sale or purchase price, with differing opinions. Kent testified that the Greene's home was listed for sale in March 2008 for $450,000 and sold in May 2009 for $295,000. (*Id*.) Hillpot testified that, in February 2009, the Greene's home was transferred from "one lending institution" (Flagstar Bank) to a "federal mortgage company" (Federal National Mortgage Association). (*See* Def's Ex C.) Hillpot testified that the sale of the Greene's home was not an "arm's length transaction," but rather a "distressed" or "foreclosure" sale. He reminded the court "that one sale does not make a market." Nelson testified that the county did not consider the Greene's home as a comparable property because it was not "a typical sale"; it was a foreclosure sale. Hillpot testified that the Greenes offered their home for sale by owner in August 2011 asking $365,000. (Def's "Picture Taken in 8/2011".) Kent testified that the Greenes, who were "balancing" two mortgages after being unable to sell another home, are no longer trying to sell that home.

Kent testified that Plaintiff's requested real market value is supported by vacant land sales, ranging from $23,000 to $113,000, and averaging $60,000. (*See* Ptf's Ex 8.) Nelson testified that he reached a different conclusion than Plaintiff after selecting three comparable land sales, ranging in size from .20 acre to .24 acre and having been sold in June 2009, October 2009, and July 2010. (*See* Def's Ex A at 9.) Nelson testified that "residential site development

cost[s]" ($15,000) and "yard improvement" costs ($16,800) must be added to the vacant lot sale price to arrive at a total land real market value. (*See id*.) Nelson testified that he determined "Indicated Value of Total Land on 1/1/2010" as "$112,800[.]" (*See id*.) Kent testified that using an estimate of 2009 building costs and adding the average of the land sale prices ($60,000), the subject property could be "built new" for $295,000. (*Id*.) Using Plaintiff's building cost of $235,000 and Defendant's "Indicated Value of Total Land on 1/1/2010" of "112,800," Nelson testified that the total subject property's real market value would be $347,800. (*See id*.)

In response to questions, Kent testified that she is not a certified appraiser or real estate agent or broker. She testified that she is an "engineering manager" and "property owner, who has done research" to support the requested real market value.

Nelson testified that he selected three comparable properties for his comparable sales approach. (*See* Def's Ex A at 7.) He testified that all properties are "similar class" (class 5) to the subject property, located in subject property's "immediate neighborhood," "similar square footage" to the subject property, and sales were "arm's length transactions, no foreclosures." Nelson's appraisal report stated that two of the three comparables "were built by the same contractor as the subject" property. (*See id*.) Nelson testified that he adjusted the three selected comparable properties, placing the most weight on Comparable Sale #4, "because of its minimal overall adjustments, similar design, and closing date ten days from the effective date of value." (*See id*.) The adjusted sale prices ranged from $362,240 to $394,740, resulting in an "indicated Value by: Sales Comparison Approach" of "**$385,000**." (*Id*., emphasis in original.) Hillpot testified that "most homes" in Plaintiff's neighborhood have a real market value of "$400,000."

/ / /

/ / /

## II.  ANALYSIS

At issue in this case is the subject property's real market value for tax year 2010-11.  Real market value is defined in ORS 308.205(1) as

> "the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."[1]

The assessment date for the 2010-11 tax year was January 1, 2010.  ORS 308.007(2).  There are three methods of valuation that are used to determine real market value: (1) the cost approach, (2) the sales-comparison or comparable sales approach, and (3) the income approach.  *Allen v. Dept. of Rev.*, 17 OTR 248, 252 (2003); *see also* OAR 150-308.205-(A)(2)(a) (stating that all three approaches must be considered, although all three approaches may not be applicable to the valuation of the subject property).  Because the subject property is a residence and not an income producing property, the income approach is inapplicable.  Neither party considered the cost approach.

A.      *Comparable sales approach*

In a case such as this one before the court, the comparables sales approach may be used to value improved properties.  *Chambers Management Corp v. Lane County Assessor*, TC-MD No 060354D at 6 (April 3, 2007) (citing Appraisal Institute, *The Appraisal of Real Estate* 335 (12th ed 2001)).  The legislature requires real market value to be determined in all cases by "methods and procedures in accordance with rules adopted by the Department of Revenue * * *."  ORS 308.205(2).  The Department of Revenue adopted OAR 150-308.205-(A)(2)(c), stating that, "[i]n utilizing the sales comparison approach[,] only actual market transactions of property comparable to the subject, or adjusted to be comparable, will be used.  All transactions

---

[1] All references to the Oregon Revised Statutes (ORS) are to 2009.

utilized in the sales comparison approach must be verified to ensure they reflect arms-length market transactions."

Plaintiff's comparable sales approach was incomplete because Plaintiff selected one property as comparable and that property was not "adjusted to be comparable * * *." OAR 150-308.205-(A)(2)(c). Plaintiff's selected comparable property was sold in May 2009, many months before the subject property's assessment date and provides little evidence of the subject property's real market value as of the date of assessment. From the information submitted by Plaintiff, the comparable property is approximately 80 square feet larger than the subject property, has one more bedroom than the subject property, and is located on a lot slightly larger than the subject property. (Ptf's Ex 3; Def's Ex A at 7.) In addition to failing to adjust for date of sale, Plaintiff made no adjustment, as required, for size, location, quality, and other distinguishing property features, if any.

As the party seeking affirmative relief, Plaintiff bears the burden of proving that the subject property's land real market value is incorrect on the tax roll. ORS 305.427. Plaintiff must establish its claim "by a preponderance of the evidence, or the more convincing or greater weight of evidence." *Schaefer v. Dept. of Rev.*, TC No 4530 at 4-5 (July 12, 2001) (citing *Feves v. Dept. of Rev.*, 4 OTR 302 (1971)). Competent evidence includes appraisal reports and sales adjusted for time, location, size, quality, and other distinguishing differences, and testimony from licensed professionals such as appraisers, real estate agents and brokers.

Plaintiff must present the greater weight of evidence to support its requested real market value reduction. Plaintiff's evidence in support of its requested real market value reduction is inconclusive. Plaintiff did not submit an appraisal report, a complete comparable sales approach, or any testimony from a certified appraiser or a licensed real estate agent or broker. When the

"evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990). Plaintiff has failed to carry its burden of proof.

Even though the burden has not shifted, the court has jurisdiction to determine the "real market value or correct valuation on the basis of the evidence pleaded by the parties." ORS 305.412. Nelson presented a comparable sales approach, making adjustments to each sale to make that property comparable to the subject property. Plaintiff presented no evidence showing that Nelson's comparable properties were not similar to the subject property. The court finds Defendant's evidence persuasive.

B.       *Purchase Price*

When determining real market value, the sale price of a recent, voluntary, arm's-length sale of property between a willing and knowledgeable buyer and seller is also very persuasive of real market value, albeit, not conclusive. *Kem v. Dept. of Rev.*, 267 Or 111, 114, 514 P2d 1335 (1973); *see also Sabin v. Dept. of Rev.*, 270 Or 422, 426-27, 528 P2d 69 (1974); *Equity Land Res. v. Dept. of Rev.*, 268 Or 410, 414-15, 521 P2d 324 (1974). The two important considerations are whether or not the sale was "recent" and whether it was "arm's length." *Kem*, 267 Or at 114-15.

Plaintiff requests that the court rely solely on the sale of a property she describes as comparable to the subject property, even though it is not the subject property, to determine the subject property's real market value as of January 1, 2010. The sale of a property other than the subject property is not persuasive of real market value unless it is adjusted to be comparable to the subject property. Plaintiff did not make any adjustments and, therefore, the court cannot rely solely on that unadjusted sale to support Plaintiff's requested real market value.

Defendant raised the issue that the sale relied on by Plaintiff was not an arm's length transaction between a willing buyer and willing seller, but a distressed sale of a bank-owned property. That property was transferred to Federal National Mortgage Association on February 27, 2009, for a stated consideration of $359,900. (Ptf's Ex 2.) The listing price of the property was reduced $20,000 in 30 days and within 14 days a pending transaction was recorded with a sale transaction closing 44 days later for $44,900 less than the listing price. (*Id*.) In approximately 15 months, that property sold for more than $150,000 less than its prior sale price on March 18, 2008. (*Id*.) Plaintiff submitted no evidence that that one sale was an arm's length market transaction. Plaintiff submitted no evidence that Defendant's comparable properties selling at substantially higher prices were other than arm's length market transactions. Given the substantial drop in value of one property over a relatively short period of time, the court concludes that Plaintiff's reliance on that one sale is misplaced.

### III. CONCLUSION

After careful consideration of the testimony and evidence, the court concludes that Plaintiff failed to carry its burden of proof. Defendant's evidence supports the subject property's 2010-11 real market value on the tax roll. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

Dated this ___ day of December 2011.

_____
JILL A. TANNER
PRESIDING MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*
*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*
*This document was signed by Presiding Magistrate Jill A. Tanner on December 15, 2011. The Court filed and entered this document on December 15, 2011.*