IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

KEVIN C. DANIELSON,          )
                                    )
        Plaintiff,          )    TC-MD 110300D
                                    )
       v.                   )
                                    )
MULTNOMAH COUNTY ASSESSOR,   )
                                    )
        Defendant.      )   **DECISION**

Plaintiff appeals the 2010-11 real market value of property identified as Account R606811 (subject property). A trial was held in the Oregon Tax Courtroom, Salem, Oregon on January 18, 2012. Plaintiff appeared on his own behalf. Dave Babcock (Babcock) appeared on behalf of Defendant. Tina Burrell (Burrell), Oregon registered appraiser, testified on behalf of Defendant.

Plaintiff's Exhibits 1 through 7 and Defendant's Exhibit A were received without objection.

## I. STATEMENT OF FACTS

Plaintiff testified that the subject property is a 3,263 square foot three level structure with four bedrooms and three and one-half bathrooms located within the city limits of Portland, Oregon. (*See* Ptf's Ex 3.) Plaintiff testified that he purchased the subject property on May 12, 2009, paying $515,000. (*See Id*. at Ex 4 at 4.) He testified that his purchase price was a negotiated arm's length transaction, stating that he believes the builder built the subject property on speculation. Plaintiff testified that the subject property is located in a "mixed neighborhood," and there is a nursing home separated by one house from the subject property.

/ / /

Plaintiff, who stated that he is an Oregon licensed attorney that does not practice before this court and described himself as a "layman" in property valuation, testified that the property located at 3640 SW Boundary (referred to as Boundary), approximately one and one-half mile from the subject property, is the most comparable to the subject property. (*See* Ptf's Ex 5 at 11.) Plaintiff testified that Boundary is located on a lot "almost twice" the size of the subject property's lot and was sold December 2, 2009, for $439,000 ($136 per square foot) after having been listed in April 2008 for $725,000. (*See id.* at 10.) Plaintiff testified that the Boundary sale was an "arm's length transaction and Boundary is "extremely similar in size, design, and quality" to the subject property. Plaintiff cited *Kem v. Department of Revenue (Kem)*, 267 Or 111, 514 P2d 1335 (1973), stating that "voluntary" arm's length sale, like the Boundary transaction, is "persuasive of fair market value" as of the date of purchase. Plaintiff confirmed in response to Babcock's questioning that Boundary is "situated with apartment buildings on two sides" and "the highway on the back." Babcock asked Plaintiff whether he thought Boundary had comparable "curb appeal" as the subject property given that the Boundary property has "two levels below grade" in contrast to the subject property that "has one level below grade." Plaintiff testified that he "likes the curb appeal of the comparable property better than the subject property" and, like the subject property, Boundary is a "contemporary home built on a fill-in lot." The parties discussed the listing history of Boundary and Plaintiff testified that the "court can take judicial notice that prices have been dropping for the last two years" based on Plaintiff's personal observations, newspaper reports and the over "100 properties" he viewed before purchasing the subject property.

Plaintiff testified that he selected two other properties located on Stephenson Street as comparable to the subject property. (*See* Ptf's Exs 6 and 7.) He testified that he computed a sale

price per square foot of $125 for 4035 SW Stephenson Street and $121 for 4027 SW Stephenson Street. Plaintiff testified that he was not "sure" if the court would consider these two sales as "distress sales" because both properties were bank owned at the time of sale. (*See* Ptf's Ex 6 at 5; Ptf's Ex 7 at 5.)

Plaintiff concluded his testimony by requesting that the court determine the subject property's real market value using Boundary's December 2009 sale price per square foot of $136 times the subject property's 3,263 square feet or $443,768 as of the assessment date, January 1, 2010. In the alternative, Plaintiff used Defendant's adjusted sale price for comparable sale 3 and divided it by the reported square footage of comparable sale 3 to compute a price per square foot of $146. Plaintiff requested that the court use the computed $146 per square foot multiplied by the subject property total square footage to determine a real market value of $467,000 as the highest value that the "subject property could be appraised at" for the 2010-11 tax year.

Burrell, who has been a certified appraiser since 2006, testified that she selected five properties located "within a one to two mile radius" as comparable to the subject property. (*See* Def's Ex A at 11.) She testified that it is "not the easiest to find fill-in properties." The parties discussed the characteristics of the subject property's neighborhood and the surrounding area and disagreed whether homes in other areas were "higher priced" than the subject property. Burrell testified that comparable sale 4, located at 5897 SW Boundary Street (next door to the subject property) is "most similar" to the subject property, stating that it was built by the same builder who built the subject property. (*See id*. at 7.) Burrell testified that she gave the "most weight" to comparable sale 3, located at 3951 SW Iowa Street, 1.14 miles from the subject property. (*See id*. at 6.) Plaintiff questioned why Burrell placed so much "weight" on comparable sale 3 when the sale occurred in March 2009, "nine months prior to the assessment date." Burrell testified

that "other two level above grade properties" selected as comparable properties are "viable alternatives" to the subject property. Burrell testified that comparable sales 1, 2, 3, and 5 are "modern to contemporary" in design and comparable sales 1, 2, and 5 were "newly constructed in fill properties." Plaintiff asked Burell why she did not include Boundary as a comparable property to the subject property; she responded that Boundary has "multiple levels below grade" with the "living quarters in the lower level" whereas the subject property has only one level "below grade."

Burrell testified that to the five comparable properties she made applicable adjustments for size, room count, "above grade," finished basement, central air conditioning, and fireplaces. (*See id*. at 7.) Burrell testified that she made no adjustment for time. She testified that she relied on a regression analysis that she did not prepare. Burrell testified that the regression analysis included all properties located in Multnomah County, west of the Willamette River, that were sold in the "winter quarter" of 2009 compared to the "winter quarter" of 2010. She testified that, according to the analysis, the "median sale price" in 2009 was $370,000 compared to the "median sale price" in 2010 of $375,000, resulting in no "need to make" a time adjustment. When questioned about the lack of a time adjustment, Burrell testified that there was "no evidence of prices declining." Plaintiff challenged Burrell's conclusion, pointing to the significant drop in price of the Boundary property.

Burrell testified that her comparable sales analysis supports the county's roll real market value, $523,330. Babcock cited *Kem* and stated that Plaintiff's purchase price of $515,000 supports the county's determination of value.

///

///

## II.  ANALYSIS

The issue before the court is the 2010-11 real market value of Plaintiff's property.  "Real market value is the standard used throughout the ad valorem statutes except for special assessments."  *Richardson v. Clackamas County Assessor*, TC-MD No 020869D, WL 21263620 at *2 (Mar 26, 2003) (citing *Gangle v. Dept. of Rev*., 13 OTR 343, 345 (1995)).  Real market value is defined in ORS 308.205(1),[1] which reads:

> "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."

There are three approaches of valuation (cost, income, and comparable sales) that must be considered in determining the real market value of a property even if one of the approaches is found to not be applicable.  *Allen v. Dept. of Rev.*, 17 OTR 248, 252 (2003); ORS 308.205(2); OAR 150-308.205-(A)(2).  Because the subject property is a residence and not an income producing property, the income approach is inapplicable.  Neither party considered the cost approach.

A.      *Comparable sales approach*

In a case such as this one before the court, the comparables sales approach may be used to value improved properties.  *Chambers Management Corp v. Lane County Assessor*, TC-MD No 060354D, WL 1068455 at *3 (April 3, 2007) (citing Appraisal Institute, *The Appraisal of Real Estate* 335 (12th ed 2001)).  The legislature requires real market value to be determined in all cases by "methods and procedures in accordance with rules adopted by the Department of Revenue * * *."  ORS 308.205(2).  The Department of Revenue adopted OAR 150-308.205-

---

[1] References to the Oregon Revised Statutes (ORS) and Oregon Administrative Rules (OAR) are to year 2009.

(A)(2)(c), stating that, "[i]n utilizing the sales comparison approach[,] only actual market transactions of property comparable to the subject, or adjusted to be comparable, will be used. All transactions utilized in the sales comparison approach must be verified to ensure they reflect arms-length market transactions."

Plaintiff's comparable sales approach was incomplete because Plaintiff selected one property (Boundary) as comparable and that property was not "adjusted to be comparable" to the subject property. *Id.* The most significant differences between the subject property and Boundary were lot size, year built, and number of levels below grade. (Ptf's Ex 3 at 1.) The Boundary seller was clearly eager to sell, because the property was vacant, and it was stated in the multiple listing that an interested party should "Make us an offer." (Ptf's Ex 5 at 3.) The Boundary owner accepted an offer made more than 15 months after the property was listed that was $56,000 less than the listing price. (*Id*. at 3, 4.) Plaintiff testified that the transaction was arm's length, but did not testify that he verified the transaction. Because there were no adjustments made to the characteristics of the Boundary property or verification of the transaction, and because of the overt eagerness of the property owner to sell, the court cannot conclude that this one property is a reliable indicator of the subject property's real market value as of the assessment date.

B.    *Purchase price*

When determining real market value, the sale price of a recent, voluntary, arm's-length sale of property between a willing and knowledgeable buyer and seller is also very persuasive of real market value, albeit, not conclusive. *Kem*, 267 Or at 114; *see also Sabin v. Dept. of Rev.*, 270 Or 422, 426-27, 528 P2d 69 (1974); *Equity Land Res. v. Dept. of Rev.*, 268 Or 410, 414-15,

/ / /

521 P2d 324 (1974). The two important considerations are whether or not the sale was "recent" and whether it was "arm's length." *Kem*, 267 Or at 114-15.

Plaintiff requests that the court rely solely on the sale of a property he describes as comparable to the subject property, even though it is not the subject property, to determine the subject property's real market value as of January 1, 2010. The sale of a property other than the subject property is not persuasive of real market value unless it is adjusted to be comparable to the subject property. Plaintiff did not make any adjustments and, therefore, the court cannot rely solely on that unadjusted sale to support Plaintiff's requested real market value.

C.      *Burden of proof*

As the party seeking affirmative relief, Plaintiff bears the burden of proving that the subject property's real market value is incorrect on the tax roll. ORS 305.427. Plaintiff must establish his claim "by a preponderance of the evidence, or the more convincing or greater weight of evidence." *Schaefer v. Dept. of Rev.*, TC No 4530, WL 914208 at *2 (July 12, 2001) (citing *Feves v. Dept. of Rev.*, 4 OTR 302 (1971)).

Plaintiff must present the greater weight of evidence to support his requested real market value reduction. This court has stated that "it is not enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the [real market value] of their property." *Poddar v. Dept. of Rev.*, 18 OTR 324, 332 (2005) (quoting *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002) (citation omitted)). Competent evidence includes appraisal reports and sales adjusted for time, location, size, quality, and other distinguishing differences, and testimony from licensed professionals such as appraisers, real estate agents, and licensed brokers.

Plaintiff failed to use any of the three common approaches prescribed by statute to determine the real market value the subject property. Plaintiff did not submit an appraisal report

or a complete comparable sales approach. Plaintiff's evidence in support of his requested real market value reduction is inconclusive. When the "evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990). Plaintiff has failed to carry his burden of proof.

Even though the burden has not shifted under ORS 305.427, the court has jurisdiction to determine the "real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412. Defendant's appraisal report did not include a time adjustment. Burrell gave the most weight to a sale that occurred in March 2009, and some weight to another sale that occurred in May 2009. Burrell relied on a regression analysis that she did not perform. She testified that the regression analysis included sales of properties located in Multnomah County that were located west of the Willamette River, resulting in an unknown quantity of sales outside the subject property's neighborhood that Burrell relies on to conclude that sale prices within the subject property's neighborhood should not be adjusted. This court has previously stated that arm's length sales must be transacted in a similar location to the subject property. Burrell did not provide the location of the sales captured by the regression analysis. The court was not provided with evidence showing the similarity of the sold properties to the subject property. Burrell's conclusion that a time adjustment is not warranted is not supported by the admitted evidence.

Burrell provided the subject property's listing history. (Def's Ex A at 2.) The subject property was marketed for almost seven months at a listing price of $549,900. The listing price was reduced to $529,000 and shortly thereafter Plaintiff purchased the property for $515,000. There was no evidence that Plaintiff's purchase price was anything other than arm's length. Defendant concludes that the subject property's real market value increased over the next seven

months. There is no evidence to support that conclusion and Defendant's evidence suggests a contrary conclusion. Burrell's comparable sale 4, a house built by the subject property's builder on a slightly larger size lot of similar quality and located next door to the subject property, was sold at about the same time as the subject property.[2] (*Id*. at 7.) Burrell's adjusted sale price without a time adjustment for that comparable property is $483,215, an adjusted value less than the subject property. (*Id*.)

Given the testimony and evidence, the court concludes that the subject property's real market value as of January 1, 2010, is $485,000. The court concludes that the ordered reduction to the real market value roll value is attributable to the improvement real market value, not the land value. Defendant shall adjust the real market value exception in accordance with the court's conclusion.

### III. CONCLUSION

After careful consideration of the testimony and evidence, the court concludes that Plaintiff failed to carry his burden of proof. Given the evidence of the parties, the court concludes that the subject property's real market value as of the date of assessment is $485,000. Now, therefore,

/ / /

/ / /

/ / /

/ / /

/ / /

---

[2] At trial Defendant attempted to introduce evidence that comparable sale 4 was a "bargain purchase." That evidence was not allowed. The court is puzzled why Defendant would include a sale in its appraisal report that it doubted met the statutory requirements of an arm's length transaction between a willing buyer and willing seller.

IT IS THE DECISION OF THIS COURT that the 2010-11 real market value of property identified as Account R606811 is $485,000.

Dated this ＿＿ day of March 2012.

_____

JILL A. TANNER
PRESIDING MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Presiding Magistrate Jill A. Tanner on March 13, 2012. The Court filed and entered this document on March 13, 2012.*