IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

| | | |
|---|---|---|
| DAMON J. PETTICORD, | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 130532D |
| | ) | |
| v. | ) | |
| | ) | |
| CLACKAMAS COUNTY ASSESSOR, | ) | |
| | ) | |
| Defendant. | ) | **FINAL DECISION** |

The court entered its Decision in the above-entitled matter on June 4, 2014. The court did not receive a request for an award of costs and disbursements (TCR-MD 19) within 14 days after its Decision was entered. The court's Final Decision incorporates its Decision without change.

Plaintiff appeals the real market value of property identified as Account 00211087 (subject property) for the 2012-13 tax year. A trial was held in the Oregon Tax Courtroom on March 18, 2014, in Salem, Oregon. John M. Berman, attorney-at-law, appeared on behalf of Plaintiff. Damon Petticord (Plaintiff) and Michael Summers (Summers) testified on behalf of Plaintiff. Kathleen J. Rastetter, senior Clackamas County counsel, appeared on behalf of Defendant. Todd Cooper (Cooper), registered appraiser, testified on behalf of Defendant.

Plaintiff's Exhibits 2 to 21 were received without objection. Plaintiff's Exhibits 1 and 22 were received with objection. Defendant's Exhibits A to I, K, and L were received without objection except for Plaintiff's request to give appropriate consideration to real estate agent comments in the multiple listing exhibits, Exhibits C and G.

/ / /

/ / /

## I. STATEMENT OF FACTS

The parties agreed that the subject property is a "two bedroom, 2.5 bath, 2,097 sq. ft. townhouse style condo located in the Mountain Park neighborhood." (Def's Exs A at 4, C at 1.) The parties agreed that Plaintiff purchased the subject property "on 01/27/2011 [or close to that date] for the price of $213,000." (*Id*.; Ptf's Ex 1.) Plaintiff testified that at time of purchase the subject property was of "average quality." The parties submitted evidence stating that the subject property was sold in 2007 for $279,505. (Ptf's Ex 1; Def's Ex C at 2.) Plaintiff testified that his purchase price for the subject property was "$66,000 less than [the 2007 sale price] after the alleged improvements." Cooper testified that "2007 was the top of the market" for sale prices of condominiums and "2011 was the bottom of the market based on median prices." Cooper testified that Defendant added real market value ($28,686) to the tax roll because the subject property was identified "as an 'outlier' in a sales study conducted by Clackamas County in 2012" and was in better overall condition than the county had thought. (Def's Ex I at 1.)

The parties dispute whether the subject property was remodeled or repaired between 2007 and 2012. Plaintiff testified that the subject property's flooring in the living and master bedroom "changed" between 2004 and 2007. Plaintiff relied on two photographs dated 2007 and similar photographs dated 2010. (Ptf's Exs 2-18.) Cooper testified that Defendant did not "consider" the living room and master bedroom flooring in its "remodeling and material upgrades." Cooper referenced the "Supplemental Addendum" within his appraisal report, stating:

> "The recent improvements include a new kitchen, new main bath, new master bath, remodeled dining room, new French doors, new entry door, new utility room flooring, new furnace and central air conditioning and new family room carpeting. The kitchen remodel included a new tile kitchen floor, new wood kitchen cabinets, new granite kitchen counters, new stainless steel kitchen appliances, new kitchen sink, new disposal and new kitchen lighting. The dining room remodel included a new tile floor, new wood cabinet and counter, new glass pantry door and new lighting. The bath remodels included new tile floors, new

granite bath counters, new cabinets/vanities, new toilets, new lighting and new tile wainscoting. During the course of the Remodel, many components and materials were upgraded to a superior produce. The upgrades are as follows:

"*Kitchen*:
"Vinyl floor upgraded to tile floor
"Laminate counters upgraded to granite counters
"Painted melamine cabinets upgraded to stained, solid wood front cabinets
"Painted appliances upgraded to stainless steel appliances.
"Laminate backsplash upgraded to granite backsplash

"*Dining room*:
"Vinyl floor upgraded to tile
"Painted melamine cabinet upgraded to stained, solid wood front cabinet
"Laminate counter upgraded to granite counter
"Hollow core wood pantry door upgraded to etched glass pantry door

"*Living room*:
"Aluminum sliding glass door upgraded to wood French door

"*Master and main baths*:
"Vinyl floors upgraded to tile floors
"Laminate counters upgraded to granite counters
"Fiberglass tub/shower units upgraded to tile wainscoting

"*Master bedroom*:
"Aluminum sliding glass door upgraded to wood French door

"*Heating/Cooling*:
"Low efficiency electric furnace upgraded to high efficiency electric furnace with heat pump/central air conditioning.

"*Family room*:
"Painted concrete floor upgraded to carpeted floor[.]"

(Def's Ex E at 8-9.) Plaintiff testified that the family room was carpeted after the January 1, 2012, assessment date. Plaintiff disputed the "heating/cooling" upgrade, testifying that the subject property had forced air heating and cooling by means of a heat pump in 2007. Cooper testified that two permits were issued "September 16, 2008," to install a "new HVAC/air conditioning" unit.

/ / /

Plaintiff testified that the changes noted to the subject property's kitchen and master bathroom were repairs attributed to a 2009 "shower leak" originating in the master bathroom and main bathroom, which are "back-to-back." Plaintiff testified that at the time he purchased the subject property he was given a disclosure statement stating the subject property had sustained water damage that had been repaired. In response to questions, Plaintiff stated that he did not submit the disclosure statement. Based on information provided to him by the prior owner, Plaintiff testified that the water caused extensive damage to the bathroom flooring, which "collapsed" into the kitchen and "destroyed" the kitchen cabinets, counters, and flooring. Plaintiff testified that the items Defendant characterized as kitchen and master bathroom remodels were repairs.

Plaintiff testified that Defendant's "upgrade" characterization is incorrect. Summers, who testified that he has been a licensed contractor since 1975 and is currently a licensed real estate broker, testified that, using "2014 costs * * * as proxy for quality difference," he concluded Defendant's "upgrades" cost less than the original items that were replaced. (Ptf's Ex 22.) Summers testified that the kitchen cabinets currently in place are of "lower quality (particle board with an engineered face) but newer" than the kitchen cabinets that were installed in the subject property prior to 2009. He testified that "average grade (builder's grade)" stainless steel appliances were installed in the kitchen in 2009. Summers testified that because "water travels everywhere (you don't know where water starts and stops)" the prior owner "took out kitchen cabinets to air so dry rot would not accumulate, and then repaired the damage caused by the water, installing new tub/showers, new cabinets, and flooring." Summers testified that the property was built in 1977 and it is "common" to replace appliances, flooring, counter tops, and cabinets because their useful lives are between 10 and 20 years. In response to questions,

Summers testified that a "sliding door" was replaced with "French doors" because the sliding door was "single pane and no longer available," and the French doors "brought the property up to current code."

Defendant challenged Summers's costs, offering internet pricing of a sliding door compared to a French door and a sink base cabinet in satin white compared to a sink base cabinet with false drawer front. (Def's Exs K, L.) Cooper testified that Summers's costs" seem low if labor is included." Cooper testified that it was "not reasonable that the kitchen flooring was replaced when the leak was repaired" and the "amount of remodeling was above and beyond minor."

Cooper testified that the "cost, income and sales comparison approaches to value were all considered." (Def's Ex A at 3.) Cooper testified that he concluded the income approach was not applicable to the subject property because it was a "single family residence" that was not an income producing investment. (*Id*.) Cooper testified that the cost approach was "given less weight in the final reconciliation" because the "subject home is over 35 years old as of the assessment date and sales of vacant lots were scarce as of the assessment date." (*Id*. at 14.)

Cooper testified that the "sales comparison approach is given the most weight." (*Id*.) Cooper testified that he prepared "two appraisals (*pre-remodel* and *post-remodel*) * * * in order to demonstrate the effect of the recent improvements on market value." (Def's Ex I at 2 (emphasis in original).) Cooper stated that the "Pre Remodel condition would be described as being adequately maintained and in average overall condition" and the "post-remodel" subject property was "recently remodeled and was in good overall condition at the time of assessment." (Def's Exs A at 3, E at 10.) Cooper identified the "recent improvements" as stated in the Supplemental Addendum. (Def's Ex E at 8-10.)

Cooper testified that in completing each appraisal he selected five properties comparable to the subject property that "sold within twelve months of the effective date of appraisal." (Def's Exs A at 8, E at 10.) He testified that the "sales were trended for time." Cooper testified that he made a $63,000 adjustment for half of the combined total of ten comparable sales that he selected for the two appraisals. (Def's Exs A at 5, E at 5.) He testified that the condition "adjustment" was based on "two paired sales, one in a remodel state and one maintained." (Def's Ex D.) Cooper was asked if a "typical" owner would pay $63,000 to remodel a "1,505-square foot-plus-500-square-foot-basement condominium in that neighborhood." Cooper testified that net adjustments ranged from minus $66,100 to plus $1,256 in the "pre-remodel appraisal" and minus $3,100 to plus $64,256 in the "post-remodel appraisal." (Def's Exs A at 5, E at 5.) Cooper testified that he concluded:

> "The *pre-remodel* appraisal indicates a market value of $162,000 as of 01/01/2012. The *post-remodel* appraisal indicates a market value of $225,000 as of 01/01/2012. The resultant difference between the before and after remodel values is $63,000. Based upon this information, the recent remodel to the subject property is felt to have increased the subject's real market value by $63,000 as of 01/01/2012.
>
> "The estimated real market value increase of $63,000 more than supports the added exception [*sic*] value of $28,686."

(Def's Ex I at 2 (emphasis in original).) Cooper testified that the "listing for the subject property in 2011" stated that it was "completely remodeled" and the "2007 listing did not mention new countertops or French doors." (Def's Ex G at 1.) In response to questions, Cooper admitted that the 2007 listing did not include a description of the subject property. (*See* Def's Ex G at 2.) Cooper was asked how the "$28,686 omitted real market value" was determined; he testified that he did not make that computation but thought it was "an adjustment to the depreciation rate" for

/ / /

the subject property. Cooper admitted that there was "nothing in evidence to support the [$28,686] adjustment" but the "information is included in the county's file."

## II. ANALYSIS

The issue before the court is the 2012-13 real market value of Plaintiff's property determined by Defendant after identifying the subject property "as an 'outlier' in a sales study conducted by Clackamas County in 2012." (Def's Ex I at 1.) "Real market value is the standard used throughout the ad valorem statutes except for special assessments." *Richardson v. Clackamas Co.*, TC-MD No 020869D, WL 21263620 at *2 (Mar 26, 2003) (citing *Gangle v. Dept. of Rev.*, 13 OTR 343, 345 (1995)). Real market value is defined in ORS 308.205(1),[1] which reads: "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year." The assessment date for the 2012-13 tax year was January 1, 2012. ORS 308.007(2).

The real market value of property "shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue * * *." ORS 308.205(2). There are three approaches of value that must be considered, although all three may not be applicable in a given case. OAR 150-308.205-(A)(2)(a).[2] The three approaches are: (1) the cost approach, (2) the sales comparison approach, and (3) the income approach. *Id.* Plaintiff did not rely on any of the three valuation approaches and did not provide evidence using any of the three approaches of value. Plaintiff relied primarily on his purchase price to support a 2012-13 real market value determination. When determining real market value,

---

[1] The court's references to the Oregon Revised Statutes (ORS) are to 2011.

[2] Oregon Administrative Rules (OAR)

"[a] recent sale of the property in question is important in determining its market value. If the sale is a recent, voluntary, arm's length transaction between a buyer and seller, both of whom are knowledgeable and willing, then the sales price, while certainly not conclusive, is very persuasive of the market value.

*Kem v. Dept. of Rev.* (*Kem*), 267 Or 111, 114, 514 P2d 1335 (1973); *see also Sabin v. Dept. of Rev.*, 270 Or 422, 426-27, 528 P2d 69 (1974); *Equity Land Res. v. Dept. of Rev.*, 268 Or 410, 414-15, 521 P2d 324 (1974). In considering a purchase price, the two important considerations are whether or not the sale was "recent" and whether it was "arm's-length." *Kem*, 267 Or at 114-15. Plaintiff's purchase, which closed more than eleven months before the January 1, 2012, assessment date, is not a recent sale and is not persuasive as to the subject property's 2012-13 real market value.

As the party seeking affirmative relief, Plaintiff bears the burden of proof and must establish his case by a preponderance of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). Plaintiff must present the greater weight of evidence to support his requested real market value reduction. This court has stated that "it is not enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the [real market value] of their property." *Poddar v. Dept. of Rev.* (*Poddar*), 18 OTR 324, 332 (2005) (quoting *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002)) (internal quotation marks omitted). "Competent evidence includes appraisal reports and sales adjusted for time, location, size, quality, and other distinguishing differences, and testimony from licensed professionals such as appraisers, real estate agents, and licensed brokers." *Danielson v. Multnomah County Assessor*, TC-MD No 110300D, WL 879285 (March 13, 2012).

Plaintiff challenges Defendant's determination of the subject property's 2012-13 real market tax roll value and Defendant's determination that the subject property's real market tax

roll value should be increased $28,686.  Plaintiff based its entire case on the unproven fact that the subject property sustained water damage in 2009, resulting in significant repairs to maintain the subject property's real market value.  Plaintiff was not the subject property's owner in 2009.  Plaintiff's testimony was hearsay.  Plaintiff testified that at time of his purchase in late 2011 he received a disclosure statement, stating that the subject property sustained water damage that had been repaired.  Plaintiff did not submit the disclosure statement to substantiate his testimony.  Plaintiff did not call the prior owners to testify about the water damage and rebut Defendant's allegation that the subject property was remodeled and upgraded rather than repaired to its pre-water damage condition.  Plaintiff relied on unauthenticated photographs to support his testimony that the subject property was repaired, not remodeled and upgraded.  Plaintiff did not dispute any of the items listed in Defendant's Supplemental Addendum detailing upgrades except the date when the family room was carpeted.  Plaintiff relied on Summers's testimony, challenging Defendant's characterization that the subject property was "upgraded."  Summers's testimony was based on his prepared 2014 price comparison for various items such as kitchen cabinets and appliances, sliding doors, French doors, and a combination tub and shower.  Plaintiff offered no evidence to support the cost of those items which Summers testified included labor costs to install.  In sum, Plaintiff criticized "the county's position" without providing any substantiated evidence to support his assertions and rebut Defendant's allegations that the subject property was remodeled and upgraded in addition to, or rather than, repaired.  *See Poddar*, 18 OTR 324 at 332.

Even though the burden of proof has not shifted to Defendant under ORS 305.427, "the court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties."  ORS 305.412.  Defendant testified that he placed the most reliance on the sales comparison approach.  (Def's Exs A at 14,

E at 16.) Defendant concluded that "[t]he estimated real market value increase of $63,000 more than supports the added exception [*sic*] value of $28,686." (Def's Ex I at 2.) Defendant is not requesting that the court order a change to the 2012-13 tax roll in the amount of $63,000 that is supported by its two appraisals. Defendant is requesting that the court agree with its determination that real market value in the amount of $28,686 was omitted from the 2012-13 tax roll. Defendant submitted no evidence to support the requested real market value. The court cannot grant its request. Defendant's evidence, "two paired sales, one in a remodel state and one maintained," submitted to support its "estimated real market value increase of $63,000," was not persuasive to the court. (Def's Exs D, I at 2.)

## III. CONCLUSION

After careful consideration of the testimony and evidence, the court concludes that Plaintiff failed to carry his burden of proof. The court cannot grant Defendant's request that the court agree with its determination that real market value in the amount of $28,686 was omitted from the 2012-13 tax roll because there was no evidence offered to support Defendant's determination. Even though Defendant failed to substantiate the 2012-13 omitted real market value, the court cannot grant Plaintiff's appeal because he failed to carry his burden of proof. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

Dated this ____ day of June 2014.

_____
JILL A. TANNER
PRESIDING MAGISTRATE

*If you want to appeal this Final Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR. Your Complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed.*

*This document was signed by Presiding Magistrate Jill A. Tanner on June 19, 2014.  The court filed and entered this document on June 19, 2014.*