IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

SHARKALOPE INDUSTRIES LLC, )
)
        Plaintiff, )   TC-MD 150118C
)
    v. )
)
TILLAMOOK COUNTY ASSESSOR, )
)
        Defendant. )   **FINAL DECISION**

This Final Decision incorporates without change the court's Decision, entered October 7, 2015. The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. *See* TCR-MD 16 C(1).

Plaintiff appeals the real market value of property identified as Account 60070 (subject property) for the 2014-15 tax year. Only the value of the land is at issue. A trial was held by telephone on September 9, 2015. Anthony McNamer (McNamer) appeared on behalf of Plaintiff. KaSandra Larson (Larson) appeared and testified on behalf of Defendant. Plaintiff's Exhibits 1 through 3 were received without objection. Defendant's Exhibit A was received without objection.

## I. STATEMENT OF FACTS

The parties orally stipulated to the basic characteristics of the subject property at the beginning of the trial. The parties agree the subject property is a 0.81 acre developed lot on the Oregon coast in the town of Rockaway Beach. The lot has a two story home built in 1978 that can be used as a duplex or single family dwelling. The home has two side-by-side units, each with an upstairs and a downstairs and an interior door upstairs that connects or adjoins the two units. (*See also* Def's Ex A at 7.) The total square footage of the upper floor is 1,710 square

feet. Each unit has a kitchen, several bedrooms, a bathroom and a living room upstairs and additional finished living space downstairs that includes a bathroom.[1] (*Id*.) The lower floor has 798 square feet of living area located behind a 912 square foot two-car basement garage. (Def's Ex A at 7 and 16.)

The lot is a long, narrow piece of property. (Def's Ex A at 17, 18, 20.) The home is built on a ridge and is located approximately 490 feet from the beach. (Def's Ex A at 9, 22.) The beach can be seen from the upper story of the home. McNamer testified that access to the beach from the home involves walking through a grassy creekside area, then over a bridge traversing an unnamed creek, and then walking through a forest to get to the beach. McNamer testified that it took about seven minutes to walk from the house to the beach. Larson testified that when she inspected the property she walked to the beach. Larson described the walk to the beach as a "short" one that was "very private." Walker acknowledged that the walk to the beach involved a stroll across a grassy area, over a bridge and through the woods. (*See also id.*at 7.)

Neither party testified as to the exact dimensions of the lot. McNamer described it as "skinny." However, what is known is that the property is 0.81 acres in size, that the rear of the home is approximately 490 feet from the beach, and that the home itself is approximately 60 feet deep from front to back. (Def's Ex A at 7, 16, 22.) A plat map and an aerial photograph reveal that the front of the home is approximately 50 feet from the front property line. (*Id*. at 20, 22.) Based on that information, the court estimates the lot to be approximately 600 feet deep and 58

---

[1] The evidence is not entirely clear on the number of bedrooms in the home because there was no specific testimony about the number of bedrooms and Defendant's appraisal has conflicting information. The appraiser's narrative description of the improvement indicates that there are only two bedrooms, whereas the comparable sales grid indicates that the home has six bedrooms. (Def's Ex A at 7 and 15.) While the number of bedrooms can be and often is a significant factor in terms of the value of the home, the home's features are of minor importance in this case because only the value of the land is at issue.

feet wide.[2] The exact dimensions of the lot are not critical for purposes of the court's decision, but help provide the reader with a visual image of the narrow rectangular shape of the lot.

Plaintiff purchased the subject property on June 5, 2014, for $299,000. (Ptf's Ex 1 at 1.) The property was originally listed for sale on or about November 10, 2013, for $439,000.[3] (Ptf's Ex 2; Def's Ex A at 8.) On or about March 27, 2014, the seller reduced the asking price to $399,000. (*Id*.) Slightly more than one month later, on or about May 5, 2014,[4] the list price was again reduced, from $399,000 to $299,000. (*Id*.) Plaintiff purchased the property one month later on June 5, 2014 for $299,000.

The real market value on the assessment and tax rolls, as sustained by the county board of property tax appeals (board), is $490,260, with $366,980 ascribed to the land and $123,280 to the improvements. (Ptf's Compl at 2.) Plaintiff is only appealing the value of the land. Plaintiff has requested a real market value of the land "of either $175,720 or $215,000." (*Id*. at 1.) Defendant has requested that the court sustain the values on the rolls. (Def's Ans at 1.) Thus, only the real market value of the land is in dispute because Plaintiff is not seeking a reduction in the value of the improvement and Defendant has simply asked that the court sustain the improvement real market value currently on the assessment and tax rolls. The court emphasizes that point because while Plaintiff's evidence focuses solely on the value of the land, Defendant's appraisal provides a single opinion of value for the entire property (land and improvements).

/ / /

---

[2] An acre of land is 43,560 square feet. The subject property is 0.81 acres, or 35,284 square feet. Judging from the aerial photograph included in Defendant's exhibit, the distance to the beach from the rear of the home, the depth of the home from front to back, and the distance in front of the house to the road, the lot would appear to be approximately 600 feet deep and 58 feet wide.

[3] Defendant has the original list date as November 7, 2013. (Def's Ex A at 8.)

[4] Plaintiff has May 14, 2014 as the price change date. (Ptf's Ex 2.)

McNamer testified that his value estimate is based on two forms of evidence: his purchase price for the subject property and the listing for the unimproved property next door. Plaintiff paid $299,000 for the subject property (land and improvements) on June 5, 2014. (Ptf's Ex 1 at 1.) McNamer testified that he subtracted the real market value of the improvement that is on the assessment and tax rolls ($123,280) from his $299,000 purchase price, to arrive at an estimated value for the land of $175,720.

Plaintiff's other evidence is based on information regarding the undeveloped lot immediately adjacent to the subject property. McNamer testified that that lot is nearly identical to the subject property, and is owned by the same person from whom he purchased the subject property. Larson did not dispute that testimony. That lot is 0.79 acres, appears to have roughly the same dimensions as the subject lot, and was listed for sale for $269,000 from December 2, 2013 to September 29, 2014, a period of approximately 10 months that straddles the January 1, 2014 assessment date. (Ptf's Ex 3 at 3, 4; Def's Ex A at 17, 20.) McNamer testified that he offered to purchase that lot for $160,000 and when that offer was rejected, he made a second offer to buy the lot for $170,000. The owner rejected both offers. Plaintiff did not submit any documentary evidence reflecting those offers, a point noted by Defendant's appraiser Larson. McNamer testified that he believed the adjoining lot is worth "about $215,000." McNamer's rationale was that his $170,000 purchase offer was rejected, so the lot was worth more than $170,000, but less than the $269,000 list price because it did not sell for that amount. McNamer did not explain how he arrived at his $215,000 estimate. McNamer did testify that he had significant experience of property values in Rockaway Beach because he purchased four properties there "in the last two years," including one vacant lot.

/ / /

Defendant valued of the property using the comparable sales approach. (*See generally* Def's Ex A at 9-13.) Defendant's value estimate presents an opinion of value for the land and improvements. (*Id.* at 9-13, 15.) Larson used three homes that sold in 2013 that were all within one mile of the subject property. (*Id.* at 9.) Larson describes the subject property and all of her comparables as oceanfront properties. The home on the subject property is located approximately 490 feet from the beach. (Def's Ex A at 22.) Larson's comparables number 1 and 2 are approximately 200 feet from the beach and her comparable 3 is located approximately 300 feet from the beach. (*Id.* at 23-25.) The homes sold in May, August, and November 2013 for unadjusted prices of $580,760 (comparable 1), $467,950 (comparable 2), and $460,550 (comparable 3). (*Id.* at 15.) All of Larson's comparables are located on smaller lots than the subject's 0.81 acre parcel; comparable 1 is on a 0.27 acre lot and comparables 2 and 3 are on 0.53 acre lots. (*Id.*) Those homes were built in 2001, 1956, and 1925, respectively, compared to the subject, which was built in 1978. (*Id.*) Two of Larson's comparables have homes similar in size to the 2,508 square foot home on Plaintiff's lot; comparable 1 is 2,420 square feet and comparable 3 is 2,380 square feet. (*Id.*) They all appear to have fewer bedrooms[5] and one of the three (comparable 3) does not have a garage. (*Id.*)

Larson adjusted her comparables for differences in lot size, class/quality, effective year built, square footage of the home, number of bathrooms, and differences in the quality or size of the garages. (*Id.* at 12, 15.) Larson's adjusted sale prices are $491,600, $511,400, and $506,900, respectively for comparables 1 through 3. (*Id.* at 15.) Comparable 1 had a total negative

---

[5] The evidence is unclear as to the number of bedrooms in Plaintiff's home. Larson's comparable sales grid sheet indicates that the subject property has six bedrooms and that all three of the comparable homes have fewer bedrooms (Def's Ex A at 15.) However, as noted earlier, Larson's narrative description of the home on Plaintiff's property indicates that there are only two bedrooms. (*Id.* at 7.) The court believes that each of the units has two bedrooms upstairs and possibly a third bedroom downstairs, but there was no testimony on this point and, as the court has already noted, the documentary evidence is unclear at best.

adjustment of $89,174, which is a net adjustment of 15.35 percent. Comparable 2 had a total positive adjustment of $43,400, which is a net adjustment of 9.27 percent. (*Id*.) Comparable 3 had a total positive adjustment of $46,350, which is a net adjustment of 10.06 percent. (*Id*.) Factoring in those adjustments, Larson estimated the value of the subject property to be $503,300. (*Id*. at 13.) Larson rejected the cost approach because of the age of the home and the income approach because "[i]ncome property is usually bought and sold on its ability to generate and maintain an income stream." (*Id*.) Larson testified that the subject property is used as a rental property.

## II. ANALYSIS

A.    *Law Concerning View Market Value and Burden of Proof*

The issue before the court is the real market value Plaintiff's 0.81 acre lot for the 2014-15 tax year. In Oregon, all real property "not exempt from ad valorem property taxation or subject to special assessment shall be valued at 100 percent of its real market value." ORS 308.232.[6] ORS 308.205(1) defines real market value as:

> "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."

For the 2013-14 tax year, the assessment date was January 1, 2014. ORS 308.007; ORS 308.210(1).

Because Plaintiff is the party seeking affirmative relief in this appeal, it has the burden of proof and must prove, by a preponderance, or the greater weight, of the evidence, that there is an error in the real market value appearing on the assessment and tax rolls. ORS 305.427; *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). "[I]f the evidence is inconclusive or unpersuasive,

---

[6] The court's references to the Oregon Revised Statutes (ORS) are to 2013.

the taxpayer will have failed to meet his burden of proof * * *." *Reed v. Dept. of Rev.,* 310 Or 260, 265, 798 P2d 235 (1990).  Moreover, a taxpayer cannot sustain its burden of proof merely through noting errors in the county's position, but must instead "provide competent evidence of the [real market value] of [the subject] property." *Poddar v. Dept of Rev.*, 18 OTR 324, 332 (2005) (quoting *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002) (citation omitted)).  "Competent evidence includes appraisal reports and sales adjusted for time, location, size, quality, and other distinguishing differences, and testimony from licensed professionals such as appraisers, real estate agents, and licensed brokers." *Danielson v. Multnomah County Assessor*, TC-MD 110300D at 7 (Mar 13, 2012).  Moreover, "the court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties."  ORS 305.412.

There are three separate approaches to valuation – cost approach, sales comparison approach, and income approach – that are to be considered in valuing a property.  *Allen v. Dept of Rev.*, 17 OTR 248, 252 (2003); OAR 150-308.205-(A)(2).  Although each approach must be reviewed, the court may determine that all three cannot be reasonably applied to the subject property's valuation.  OAR 150-308.205-(A)(2)(a).  The selection of the appropriate valuation approach is a question of fact "to be determined by the court upon the record." *Pacific Power & Light Co. v. Dept. of Rev.*, 286 Or 529, 533, 596 P2d 912 (1979).

B.      *Plaintiff's Evidence*

Plaintiff's case is based upon the sale of subject property, with adjustments to remove the value of the improvements, and the unsuccessful listing of an adjoining lot.  Plaintiff's evidence has a number of shortcomings that make McNamer's opinion of value unpersuasive.

/ / /

1.      *Sale of the subject property*

Plaintiff purchased the subject property in June 2014 for $299,000. He subtracts the $123,280 real market value of the improvements appearing on the assessment and tax rolls to arrive at an opinion of value of $175,720. Plaintiff's reliance on the purchase price is flawed in two respects. First, Plaintiff subtracts the improvement value appearing on the assessment and tax rolls from the purchase price to arrive at a value for the subject lot. The real market value on the assessment and tax rolls is a result of mass appraisal techniques and does not necessarily reflect the market value of the home. *See Prestwood v. Deschutes County Assessor*, TC-MD 090589C at 4 (Feb 26, 2010) (where defendant "remov[ed] improvement values to arrive at a (residual) land value"; the court found this unpersuasive stating that "[t]ax roll values are not market transactions.") It is therefore inappropriate to subtract the roll value of the home from the total purchase price to arrive at an opinion of value for the land. Second, there is a question as to whether Plaintiff's purchase was arm's-length or whether there was an element of duress involved in the sale. The parties testified, and the evidence confirms, that there were significant reductions in the asking price of the property between early November of 2013 and early to mid May 2014, a span of only approximately eight months. (Ptf's Ex 2; Def's Ex A at 8.) The subject property was originally listed for sale in November 2013 for $439,000. (*Id*.) Less than four months later, on or about March 27, 2014, the list price was dropped to $399,000. (*Id*.) Approximately one month later, on or about May 5, 2015, the seller reduced the asking price $100,000, from $399,000 to $299,000. (*Id*.) The total reduction in the list price was $140,000. Plaintiff then bought the property one month later, on June 5, 2014, for $299,000. (Ptf's Ex 1 at 1; *see also* Ptf's Ex 2; Def's Ex A at 8.) McNamer testified that the total value was between

/ / /

$399,000 and $299,000, but his value estimate of $175,720 is based on the $299,000 purchase price.

McNamer responded to Larson's contention that Plaintiff's purchase involved an element of duress by testifying that there was no evidence that his purchase was not arm's-length; he did not know the owner of the property prior to the purchase, and the seller of the subject property owns the adjacent lot which Plaintiff attempted unsuccessfully to purchase for approximately $100,000 less than the $269,000 asking price. McNamer testified that in his opinion those facts demonstrate that the seller was not in need of cash or otherwise desperate to sell either property and the sale was not a distress sale. McNamer presumes that if the seller were under some duress, she would have sold the adjoining property for less than $269,000. McNamer concludes that because the seller of that lot refused to accept less than the $269,000 asking price, the fact that she reduced the asking price of the subject property and accepted Plaintiff's $299,000 offer (for the land and the home), shows that his purchase of the subject property was arm's-length. McNamer then testified that the best evidence of the value of a property is the purchase price.

The Oregon Supreme Court addressed that latter point in *Kem v. Dept. of Rev.*, 267 Or 111, 114, 514 P2d 1335 (1973). The Court in *Kem* ruled that "[a] recent sale of the [subject] property * * * is important in determining its market value. If the sale is a recent, voluntary, arm's length transaction between a buyer and seller, both of whom are knowledgeable and willing, then the sales price, while certainly not conclusive, is *very persuasive* of the market value." *Id*. (Citations omitted) (emphasis added). However, the Court in *Kem* "emphasize[d] that a recent sale of the subject property is not necessarily *determinative* of market value and does not foreclose other methods of valuation[.]" *Id*. at 115 (emphasis added); s*ee also Sabin v. Dept. of Rev*., 270 Or 422, 426-27, 528 P2d 69 (1974) (stating that "[a] sale of the [subject]

property within a reasonable time of the assessment while not conclusive, is very persuasive of market value."); *Equity Land Res. v. Dept. of Rev.*, 268 Or 410, 415, 521 P2d 324 (1974) (finding that a recent arms-length sale of the subject property was the "best and most satisfactory" estimation although "not conclusive."). The two important considerations are whether the sale was "recent" and whether it was "arm's length." *Kem,* 267 Or at 114.

The sale in this case was recent, but was it arm's-length? The evidence is equivocal on that point. A $140,000 reduction in the asking price in a span of approximately eight months could either mean the seller began with an unreasonably high list price or that she was somewhat desperate to sell and dropped the price move the property. The evidence is simply inconclusive on that point. The testimony of the listing agent or the seller would have been helpful to the court. And again, Plaintiff's $299,000 purchase included the land and the home and Plaintiff adjusts its purchase price by removing the real market value of the home, so Plaintiff is not simply relying on the purchase price. Finally, the Oregon Supreme court has noted that "one sale does not make a market. The basic assumption of the sales comparison approach is that there is sufficient data and information available to provide a pattern or range of indicated value. The sales comparison approach is intended to reflect 'the market' and not just one or two buyers." *Truitt Brothers, Inc. v. Dept. of Rev.*, 302 Or 603, 609, 732 P2d 497 (1987). Plaintiff's purchase is one sale. Plaintiff offered no other sales.

2. *List price of the adjoining lot*

Plaintiff argues that because the lot immediately adjacent to the subject lot did not sell for the $269,000 asking price, that lot must be worth less than $269,000. Plaintiff asserts that because the two lots are identical, his lot is also worth less than $269,000. That assumption may or may not be true. The adjoining lot was only on the market for 10 months. (Ptf's Ex 3 and 4.)

The seller never reduced the asking price. *Id.* It may well be that the seller believed that the lot was worth the $269,000 she was asking for that property. If that is the case, and if Plaintiff's lot is truly identical, then Plaintiff's lot is theoretically worth at least $269,000. Of course, no two properties are truly identical. Plaintiff's lot may be worth more or less than the lot next door. Additionally, the evidence concerning the adjoining lot is an asking price and not a market transaction. The lot never sold. That fact reduces the evidentiary value of the information concerning the listing of that lot.

Furthermore, for property tax purposes, the real market value of land includes site developments. ORS 307.010(1)(a) (providing in part that "land includes any site development made to the land"). That statute goes on to explain that " 'site development' includes fill, grading, leveling, underground utilities, underground utility connections and any other elements identified by rule of the Department of Revenue." ORS 307.010(1)(a). The Department of Revenue (department) promulgated an administrative rule that mirrors the statute, explaining that:

> "[s]ite developments are improvements to the land that become so intertwined with the land as to become inseparable. Examples are: fill, grading and leveling, utility facilities (sewer, water, etc.), cost of developer's activities and profit that accrues to the land, including but not limited to: permits, advertising, sales commissions, developer's profit and overhead, insurance coverage, and any other improvements to the land necessary to improve it to become a site."

OAR 150-307.010(2(a)(A). The adjoining lot is undeveloped and there is no evidence that there are any site developments on that property. Therefore, whether the lot was worth $269,000 or some lesser amount in its present undeveloped state, site developments would add to the value of that lot. There was no evidence presented in this case as to the cost of any site developments that would be required to make that lot buildable, or the value such improvements would add to the undeveloped lot. Even if there had been evidence on all of those points, it would still be highly

speculative as an indicator of the value of Plaintiff's developed lot because it involves a list and not a sale, it assumes the two lots are identical, and includes conjecture as to the cost and corresponding value of the site improvements. Plaintiff has simply failed to meet its burden of proof.

The court does have the statutory authority under ORS 305.412 to determine the real market value based on the evidence before it, without regard to the values pled by the parties, but in this case the evidence does not lead to a different value conclusion than the value currently on the assessment and tax rolls. The court has already found Plaintiff's evidence to be unpersuasive, and Defendant's appraisal presents an opinion of value for the entire property – land and improvements – whereas the appeal involves only the value of the land. That being the case, the court finds no basis for upsetting the land real market value currently on the assessment and tax rolls.

## III. CONCLUSION

The court concludes that Plaintiff has failed to establish by a preponderance of the evidence that the real market value of the land component of the property identified as Account 60070 for the 2014-15 tax year, as sustained by the county board of property tax appeals, should be reduced from the current figure of $366,980. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

Dated this ____ day of October 2015.

_____
DAN ROBINSON
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*
*Your complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed.  TCR-MD 19 B.*
*This document was filed and entered on October 27, 2015.*